## COMPAGNIE GENERALE TRANSAT- LANTIQUE v. UNITED STATES.

### No. 45696.

Court of Claims.

June 28, 1948.

798

Fred W. Shields, of Washington, D. C. (Lambert O'Donnell and King & King, all of Washington, D. C., on the brief), for plaintiff.

Kendall M. Barnes, of New York City, and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

MADDEN, Judge.

The plaintiff, a French corporation, in 1936 transported by ship four minor children of Faustino Serrano, a citizen of Puerto Rico, from Cuba to Puerto Rico. These children had been born in Cuba as the illegitimate children of Serrano. Prior to arranging for their transportation to Puerto Rico, where he desired that they should reside permanently with him, Serrano had acknowledged the children as his before a Municipal Judge in charge of the Civil Registry at Santiago, Cuba. The effect of this proceeding, according to Cuban law, was to give to the children (1) the right to bear the surname of their father, (2) the right to be supported by him, and (3) the right to inherit his property, in a proper case. Under Cuban law the only way in which a child could be "legitimatized" was by the subsequent marriage of his parents.

Serrano made application to the plaintiff company for the transportation of the children to Cuba, and they were transported, for a total fare of $22. On reaching Puerto Rico the children were excluded as "non-quota immigrants not in possession of unexpired immigration visas." The plaintiff company was fined $4,000, $1,000 for each of the children, by the Secretary of Labor, pursuant to section 16 of the Act of May 26, 1924, 43 Stat. 163, 8 U.S.C.A. § 216,[1] and was required to refund the $22 of passage money to Serrano.

The plaintiff says that the children were citizens of the United States, and were, therefore, not required to have immigrants' papers to enter Puerto Rico. The Act of May 24, 1934, § 1, 48 Stat. 797, 8 U.S.C.A. § 6 (repealed by the Nationality Act of 1940, 54 Stat. 1172, Chap. 876), amended Section 1993 of the Revised Statutes to read as follows:

"Any child hereafter born out of the limits and jurisdiction of the United

---

[1] "Sec. 16 (a) It shall be unlawful for any person, including any transportation company, or the owner, master, agent, charterer, or consignee of any vessel, to bring to the United States by water from any place outside thereof (other than foreign contiguous territory) (1) any immigrant who does not have an unexpired immigration visa, or (2) any quota immigrant having an immigration visa the visa in which specifies him as a nonquota immigrant.

"(b) If it appears to the satisfaction of the Secretary of Labor that any immigrant has been so brought such person or transportation company, or the master, agent, owner, charterer, or consignee of any such vessel, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each immigrant so brought, and in addition a sum equal to that paid by such immigrant for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival, such latter sum to be delivered by the collector of customs to the immigrant on whose account assessed. No vessel shall be granted clearance pending the determination of the liability to the payment of such sums, or while such sums remain unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of an amount sufficient to cover such sums, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs.

"(c) Such sums shall not be remitted or refunded, unless it appears to the satisfaction of the Secretary of Labor that such person, and the owner, master, agent, charterer, and consignee of the vessel, prior to the departure of the vessel from the last port outside the United States, did not know, and could not have ascertained by the exercise of reasonable diligence, (1) that the individual transported was an immigrant, if the fine was imposed for bringing an immigrant without an unexpired immigration visa, or (2) that the individual transported was a quota immigrant, if the fine was imposed for bringing a quota immigrant the visa in whose immigration visa specified him as being a nonquota immigrant."

States, whose father or mother or both at the time of the birth of such child is a citizen of the United States, is declared to be a citizen of the United States; but the rights of citizenship shall not descend to any such child unless the citizen father or citizen mother, as the case may be, has resided in the United States previous to the birth of such child. In cases where one of the parents is an alien, the right of citizenship shall not descend unless the child comes to the United States and resides therein for at least five years continuously immediately previous to his eighteenth birthday, and unless, within six months after the child's twenty-first birthday, he or she shall take an oath of allegiance to the United States of America as prescribed by the Bureau of Naturalization."

 The statute speaks of "any child" whose father is a citizen of the United States. Did it include these children? Obviously, some interpretation of the statute is necessary, as it could hardly have been intended to include the common law illegitimate, the nullius filius, whose claim of citizenship would involve a paternity trial, with the father, perhaps, denying paternity and the child asserting and attempting to prove it. Concededly, something more than mere paternity must have been intended to be required to enable one to qualify as a "child" under the statute. But how much more? The purpose of the statute was, we suppose, to insure that the child had in it the blood of an American citizen and that that fact would be evident without the uncertainties of a contested trial of paternity. It may have been intended that the child should have a claim on a parent for support. What, further than these, the statute might reasonably have been intended to require, does not occur to us, and has not been suggested by the Government. We think, for instance, that the statute would not have intended to discriminate between two children born illegitimately in Cuba to two American fathers, one of whom thereafter married his child's mother and the other of whom, prevented from doing so by the death of the mother, did all that he could by formally acknowledging his pa-

ternity, as Serrano did. Yet, according to the Government's contention, the one child would be "legitimate" and an American citizen, the other "illegitimate" and an alien. This would be penalizing the child not only for the sins of the father but for the unfortunate death of the mother.

 There is, of course, no federal statute defining legitimacy, or prescribing the manner of acquiring that status. The law of the various States is all statutory, the common law having been that the child born out of wedlock is and remains the "child" of no one, not even of his mother. The statutes vary greatly, but it may be noted that in eight of our States an illegitimate may be made legitimate by acknowledgment by the father without even the formality of a writing, and in twenty-one States by acknowledgment evidenced by a writing, in some cases with witnesses. Vernier, American Family Laws, Volume 4, Sections 243, 244. In two States all children are the "legitimate" children of their natural parents. Vernier, Op. Cit. Section 245. Other States prescribe various formalities for legitimation. It may be said, then, that in at least a majority of the American States, what was done by Serrano to make his children legitimate, or much less than what he did, would have made them legitimate. An interpretation of the citizenship statute, then, to the effect that each of these children was the "child" within the meaning of the statute, of an American citizen, in no way offends the mores of this Country, and we give the statute such an interpretation. It follows that the children were American citizens, and the statute under which the plaintiff was penalized for bringing them to United States soil was misapplied.

 The Government contends that the evidence presented by the plaintiff, consisting only of the file of the Immigration and Naturalization Service of the United States Department of Labor, is inadmissible as hearsay and that, thereafter, the plaintiff has not proved its case. Much of the story is gleaned from the transcript of the testimony of Serrano before the

Board of Special Inquiry of the Immigration and Naturalization Service. It was a formal proceeding, Serrano was under oath, was questioned by the members of the Board, and submitted formally certified documents with his testimony. We think that this is trustworthy evidence. Serrano's formal acknowledgments of paternity, proved by certified documents, were admissions against interest of the strongest kind, subjecting him to liability to support the children. The other papers in the file are Government communications and the responses thereto, of the kind that are common in our cases. We think the facts of the case have been satisfactorily proved.

The Government contends in effect, that the action of the Secretary of Labor in imposing the fine here sought to be recovered, is not subject to review. We think that the Secretary misinterpreted the pertinent statute. We do not disagree with her as to the facts of the case, but we think that her determination as to what was the applicable law is not final.

The plaintiff may recover $4,022.

It is so ordered.