### UNITED STATES ex rel. CUMBERBATCH v. SHAUGHNESSY.

United States District Court
S. D. New York.
Nov. 13, 1953.

Edward L. Dubroff, Brooklyn, for relator.

J. Edward Lumbard, U. S. Atty., New York City, for respondent.

SUGARMAN, District Judge.

On April 13, 1923 relator legally entered the United States from British West Indies. On January 29, 1929 he was naturalized as a citizen of the United States in the District Court for the Eastern District of New York. He returned to Trinidad, B. W. I. some time in December, 1939. On June 19, 1941 at Port of Spain, Trinidad, and on November 20, 1943 at San Juan, Trinidad, a daughter and son respectively were born, out of wedlock, to relator and one Juanita Gueverra who subsequently married relator in Trinidad on November 26, 1944. About ten months before said marriage, on January 15, 1944, relator executed, subscribed and swore to, before the Vice Consul of the United States at Trinidad, B. W. I., a "Report of Birth" for each said child, stating in each, that relator and said Juanita, parents of each said child, were married at Trinidad, B. W. I., on December 4, 1940—an undisputed falsehood. On April 12, 1944 the State Department approved the birth reports of the two children.

On October 9, 1947 the Vice Consul of the United States at Trinidad, B. W. I., executed a certificate of relator's loss of nationality of the United States stating the grounds of expatriation to be "Section 404(b) of Chapter IV of the Nationality Act of 1940 * by residing continuously for over seven years in the country of which he was formerly a national and in which he was born" and the evidence thereof to be an "application for registration submitted to Dept.,

---

\* Now Immigration and Nationality Act, § 352, 8 U.S.C.A. § 1484.

January 24, 1947—Cable No. 58 from Dept. of State dated October 2, 1947, disapproved citizenship—lost through operation of above Section 404(b)". The record fails to indicate what "application for registration" brought about the expatriation.

On December 1, 1947 relator again arrived in the United States under a quota consular immigration visa issued to him by the American Consul in Port of Spain, Trinidad.

On March 2, 1948 relator was examined by a "Status Examiner" of the Immigration and Naturalization Service at its New York office. On January 26, 1949 relator was again examined by an "Investigator-Examining Officer" of the Service at its New York office.

On April 14, 1949 relator was arrested on a warrant charging him with being in the United States in violation of the immigration laws for the reasons: "The Act of Feb. 5, 1917, in that he admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to entry into the United States, to wit: Perjury."

Relator was arrested June 2, 1949 and on November 18, 1949 was accorded a hearing at which he was represented by counsel. On January 19, 1951 relator was accorded a "de novo hearing", because of decision of the Supreme Court in Wong Yang Sung v. McGrath,[1] at which he declined counsel. The hearing officer filed his decision ordering relator's deportation to which relator excepted. On June 20, 1951 "Assistant Commissioner, Adjudications Division" of the Service adopted the recommended order of the hearing officer and ordered relator's deportation from which relator appealed by counsel. On November 15,

1951 the Board of Immigration Appeals dismissed the appeal. Relator, under directions of the respondent, surrendered for deportation on October 12, 1953 for deportation to Trinidad on October 14, 1953 but the deportation was stayed by the within writ of *habeas corpus* allowed on October 13, 1953.

At the last hearing relator admitted that the statement made by him, under oath on January 15, 1944 before the consular officer, that he had, on December 4, 1940, married the mother of the two children for whom he was seeking to establish citizenship, was known by him to be false. The examining officer was correct in advising relator at that hearing that the false statement was material to the issue of the children's citizenship, for, had the truth been disclosed, the State Department, before approving the citizenship of the two children, would have been put on inquiry whether they had, under the laws of British West Indies, been legitimated, at least to the extent then required by the State Department[2] that the putative father acknowledged parenthood.

■■ Relator bases his case on the assertion that notwithstanding his admission of the commission of perjury, "it is a fundamental principle of immigration law that where it is claimed that an offense involving moral turpitude has been committed by an alien, that the act must be criminal not alone in the United States, but also in the foreign territory or country in which it is claimed it was committed". This argument ignores Tit. 22 U.S.C.A. § 1203. The relator's admitted perjury before the consular officer was the same as though committed within the United States.[3]

1. 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616.

2. Hearings before the Committee on Immigration and Naturalization, House of Representatives, 76th Cong., 1st Sess., on H.R.6127 superseded by H.R.9980, Proposed Code with Explanatory Comments, § 204, p. 431; Report of the Committee on the Judiciary on Immigration and Naturalization Report No. 1515, 81st Cong., 2nd Sess., Part 2, Chap. III, C. 3, p. 692; Compagnie Generale Transatlantique v. United States, 78 F.Supp. 797, 111 Ct.Cl. 601.

3. United States v. Archer, D.C.Cal., 51 F. Supp. 708; United States ex rel. Majka v. Palmer, 7 Cir., 67 F.2d 146.

The admitted perjury amounted to moral turpitude [4] warranting the deportation ordered.[5]

Writ dismissed and relator remanded to custody of respondent.

4. 8 U.S.C.A. § 155(a), now Immigration and Nationality Act, § 241, 8 U.S.C.A. § 1251.

5. United States ex rel. Karpay v. Uhl, 2 Cir., 70 F.2d 792.