MATTER OF SS. RYNDAM

In FINE Proceedings

NYC–10/52.146

*Decided by Board April 12, 1962*

*Decided by Attorney General April 16, 1963*

In a fine proceeding under section 273, Immigration and Nationality Act, the carrier is not precluded from offering evidence on the question of due diligence simply because that evidence might tend to impeach the correctness of the order excluding the alien.

IN RE: SS. *RYNDAM*, which arrived at the port of New York from foreign on February 20, 1961; Alien passenger involved: HERMANUS C. BRONS.

BASIS FOR FINE: Act of 1952—Section 273 [8 U.S.C. 1323].

### BEFORE THE BOARD

In connection with the arrival of the alien passenger mentioned above, the District Director at New York imposed an administrative penalty of $1,000 against Holland-America Line. We withdrew the District Director's order on November 20, 1961 and remanded the case to him in order that the carrier might have the opportunity of submitting additional pertinent evidence. On February 12, 1962 we denied a motion of the Service for reconsideration. The matter is now before us pursuant to the request of the Service on March 6, 1962 that the case be referred to the Attorney General for review under 8 CFR 3.1(h)(iii).

Hermanus C. Brons, the alien passenger involved, was admitted to the United States for permanent residence as an immigrant on December 3, 1956. At the time of the arrival involved here (February 20, 1961), he was in possession of a valid Dutch passport and an Alien Registration Receipt Card (Form I–151) No. 10443369. Under 8 CFR 211.1, the Form I–151 would have relieved this alien from the requirement of a visa if he was returning to an unrelinquished lawful permanent residence after a temporary absence abroad not exceeding one year. At the exclusion hearing, the alien testified (p. 5) that he had received a card from his local draft board in Columbus, Ohio

regarding a physical examination, and that he was planning to go there directly for the purpose of being inducted as soon as possible. He also testified that, when he left the United States about November 1959, it was for the purpose of marrying his fiancee and with the intention of returning to the United States with his wife after the marriage. The special inquiry officer held that the alien had been abroad for more than one year and that he had abandoned his status as a lawful permanent resident. That officer directed that the alien be excluded and he was returned to the vessel on the same day for deportation. A letter dated September 12, 1961 from the Holland-America Line contains the statement that, at the time the alien booked passage on February 6, 1961, he had presented a letter indicating that he lived in the United States until February 15, 1960.

In attempting to state the issue in this case, the memorandum of the Service dated March 6, 1962 shows that it believes that the carrier is making an "unwarranted collateral attack on a duly-entered final order of exclusion." However, the actual issue here is simply whether or not the carrier is entitled to present its defense in full. That this question must be answered in the affirmative seemed so clear to us that we did not deem it necessary to answer in detail the arguments in the Service motion of December 13, 1961. Since the Service memorandum of March 6, 1962 complains that we did not answer any of the points it had raised, we believe that some further clarification of the matter is appropriate.

Subsection (a) of § 273 of the Immigration and Nationality Act [8 U.S.C. 1323(a)] makes it unlawful to bring to the United States "any alien who does not have an unexpired visa, *if a visa was required under this Act or regulations issued thereunder*" (emphasis supplied); subsection (b) provides that, if the Attorney General is satisfied that there has been a violation, a fine of $1,000 shall be imposed; and subsection (c) prohibits remitting or refunding the fine unless it appears to the satisfaction of the Attorney General that the carrier "did not know, and could not have ascertained by the exercise of reasonable diligence, that the individual transported was an alien and that a visa was required." The carrier is seeking to present evidence on two points: (1) that this particular alien did not require a visa and (2) that, even if a visa was required, the fine should be remitted under § 273(c).

It was not until March 31, 1961, about a month after the alien's deportation from the United States, that the carrier was notified by the District Director concerning his intention of imposing a fine under § 273. In the carrier's protest to the imposition of fine, submitted on May 18, 1961, a request was made for a transcript of the exclusion proceeding and an opportunity to cross-examine the alien. A letter

of the District Director at New York (apparently dated August 25, 1961) informed counsel that no action could be taken upon his request for cross-examination of the alien passenger.

Our action in this case, which permits the carrier to present additional pertinent evidence including the testimony of the alien passenger, does not imply that it is the duty of the Service to render assistance to the carrier in presenting its defense, nor that it is the obligation of the Service, in a case such as this, to have the passenger available for cross-examination by the carrier. On the contrary, we do not hold that the carrier was entitled to cross-examine the alien during the exclusion proceeding nor that it was necessary to notify the carrier, prior to the deportation of the alien from the United States, concerning the possible institution of fine proceedings. However, the carrier here has assumed the full responsibility for producing the alien before the American Consular Officer in the Netherlands, and counsel has suggested that he will bear the expense of questioning the alien through interrogatories and cross-interrogatories. Under the circumstances, the case is simply one in which the carrier desires to present the testimony of a witness for the consideration of the District Director, and we do not believe there is any basis for refusing to accept the testimony merely because the witness happens to be the alien passenger involved. On the other hand, if an alien departs from the United States and the carrier is unable to locate him, the carrier would be in the same position as any other litigant who is unable to produce a witness.

The question of whether or not this alien passenger had abandoned his residence in the United States and the question of whether he had or had not been absent for over one year are clearly matters pertinent to the carrier's defense. Assuming that the carrier will produce the alien before the American Consular Officer, we believe that will be the appropriate method of affording the carrier an opportunity to question the alien as a witness in its defense.

The motion of the Service dated December 13, 1961 refers to "an unwarranted reexamination of a duly-arrived-at exclusion ruling of a special inquiry officer, after hearing" (p. 5) and contains the assertion that counsel is seeking to make a collateral attack on the special inquiry officer's findings (p. 7). At the exclusion hearing, the special inquiry officer made no formal findings of fact but it is clear that he did hold that the alien required an immigrant visa. The Service takes the position that the carrier is conclusively bound by such a finding of a special inquiry officer and apparently it claims this would be true regardless of what facts a carrier might be able to present to show that, in a particular case, the alien did not require a visa. None of the cases cited by the Service is authority for such a proposition, and the Service has not brought to our attention any provision of the statute

or regulations which would preclude a carrier from presenting evidence that an arriving passenger actually did not require a visa.

In *Matter of H—*, 7 I. & N. Dec. 407, 409 (1957), where there had been a prior *judicial* decision, we discussed the distinction between res judicata and collateral estoppel by judgment. Although the Service has refrained from using these terms, it apparently is seeking to apply these doctrines to the special inquiry officer's finding that the alien required a visa. However, these doctrines can be utilized only where the same parties are involved in the two proceedings and they cannot be applied to this carrier who was not a party to the exclusion proceeding.

The carrier is not attacking the exclusion order as such and any decision which may eventually be made with respect to the carrier will have no effect on the finality of the order excluding the alien. In other words, after the carrier has had the opportunity of presenting its defense in full, the District Director will be able to pass on whether the carrier is subject to fine, depending on whether this alien did or did not require a visa. However, if the District Director holds that the alien did not require a visa, the alien himself will not be able to attack the exclusion order since it became final as to him on February 20, 1961 under § 236 of the Immigration and Nationality Act.

The Service stated (motion of December 13, 1961, p. 8) that the Board had uniformly rejected attempts of carriers to bring fine proceedings within the Administrative Procedure Act and the decision in *Wong Yang Sung* v. *McGrath*, 339 U.S. 33 (1950). Although this statement of the Service is correct, it has no particular relevance since counsel has not claimed that the Administrative Procedure Act or the Sung decision have any applicability to this fine proceeding.

As counsel indicated, the court made the following statement in *Lloyd Sabaudo Societa Anonima* v. *Elting*, 287 U.S. 329, 336–337 (1932): "We think it clear * * * that the statute, as it has been consistently construed administratively, contemplates that the Secretary should fairly determine, after a hearing and upon the evidence, the facts establishing its violation." The pertinent regulations are contained in Part 280, Title 8, Code of Federal Regulations. 8 CFR 280.14 specifically refers to testimony adduced at the interview, and we believe it is immaterial that Part 280 contains references to "personal appearance" and "personal interview" rather than to a hearing. We hold that the regulations in Part 280 provide due process.

In its motion of December 13, 1961 (pp. 5–9), the Service argued that, on the basis of all the facts of record, the alien required a visa and the carrier did not exercise reasonable diligence. It may be that this will be our eventual conclusion. However, the important consideration in this case is that 8 CFR 280.12 specifically provides: "* * * the

243

evidence in opposition to the imposition of the fine and in support of the request for mitigation or remission may be presented at such interview." Here we have a case in which the carrier desires to present the alien's testimony for the consideration of the District Director, and the Service seeks to preclude the presentation of such evidence. We find no merit in the contention of the Service that the alien's testimony would be of no value to the carrier. After the testimony is taken, it may be of no value or it may even be damaging to the carrier. However, the regulation specifically provides that the carrier may present evidence in opposition to the imposition of fine and, if it desires to present the alien's testimony, we believe the carrier is entitled to do so.

The Service asserted (motion of December 13, 1961, p. 8) that the requirements of procedural due process stated in 8 CFR 280 "were punctiliously followed in this proceeding". Actually, in certain respects the requirements of the regulation were not observed. In the first place, when the carrier protested the imposition of fine, it requested cross-examination of the alien. The District Director's letter stated that no action could be taken upon this request and referred to the alien's departure from the United States. We have held above that a carrier may present the alien passenger as its witness and that the testimony may be taken through interrogatories before an American Consular-Officer. The District Director's refusal to take action on counsel's request was in error since it precluded the carrier from presenting certain evidence in opposition to the imposition of a fine as provided by 8 CFR 280.12.

In another respect also there was a failure to comply with the regulation. Where a personal appearance is requested, 8 CFR 280.13(b) states that the case shall be assigned to an immigration officer and provides: "The immigration officer shall prepare a report summarizing the evidence and containing his findings and recommendation. *The record, including the report and recommendation of the immigration officer*, shall be forwarded to the district director" (emphasis supplied). 8 CFR 280.14 specifically refers to the "record made under § 280.13" and sets forth certain additional matters to be included. The record before us does not contain the report summarizing the evidence, prepared by the immigration officer to whom the case was assigned, nor his findings and recommendation.

A third matter is that 8 CFR 280.14 provides that one of the items to be included in the *record* is "documentary evidence and testimony *adduced at the interview*" (emphasis supplied). Since we were not even furnished the immigration officer's report under 8 CFR 280.13(b), we are unable to determine precisely what transpired at the personal interview, and we believe the present record is defective for that reason.

We do not regard the copy of the District Director's letter of August 25, 1961 as complying with these specific provisions of the regulations. The only statement in it relating to the personal interview appears on page 2 where it was stated that a copy of the exclusion hearing and all other evidence of record was reviewed by counsel's representative, Mr. Edward L. Dubroff, during a personal interview conducted by Inspector Berry on August 4, 1961.

Paragraph (1) of 8 CFR 3.1(d) provides that, subject to any specific limitation, "the Board shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case", and paragraph (2) provides that the Board may return a case to the Service for such further action as may be appropriate without entering a final decision on the merits of the case. At the time of our original consideration of the case, we concluded that, before rendering a decision on the merits, it was appropriate and necessary that the carrier be permitted to present its defense in full, including the testimony of the alien.

In its memorandum of March 6, 1962, the Service stated that our decision was contrary to long-standing administrative practice and that it directs a major departure from existing regulations. Actually, there never has been any practice that a carrier is to be precluded from presenting his defense in full, whether the defense consisted of the testimony of our witnesses or the testimony of the alien passenger. Our decision also is not a departure from existing regulations. On the contrary, it is merely to require that the existing regulations be observed.

The Service submitted copies of several decisions of the Board, one of which was dated June 16, 1950 and the others bearing dates between 1957 and 1961. These are unreported decisions which are not available to counsel and he has not been furnished copies of them nor an opportunity to differentiate between these decisions and his client's case. One of the matters to which the Service invited attention was our statement that the regulations do not require that the carrier be afforded the opportunity of being present at the exclusion hearing of the alien passenger. In these cases, the carrier was apparently claiming that this was a fatal defect which barred the imposition of a fine, and we rejected the contention. Here, counsel makes no such claim but merely asks that the carrier be permitted to now examine the alien and present his testimony. The other point to which the Service invited attention in these unreported decisions is that a fine was properly imposed where the procedure specified in the regulation was followed. Here, as we have pointed out, certain requirements of the regulation were not observed.

The Service cited (motion of December 13, 1961, pp. 5 to 8) judicial authority for statements that the carrier is charged with whatever knowledge it would obtain from a competent examination of the alien; that the authority to exact penalties is an incident to the vast power of Congress to control the entry of aliens; that it is proper for Congress to invest administrative officers with the power to assess penalties; that the courts have no direct function in this process except to correct abuses; and that the Attorney General's decision as to the weight to be given to the evidence in a fine proceeding is final provided that the decision is supported by substantial evidence. All of these principles are clear and we are well aware of them. However, counsel does not dispute any of these; they are not involved in this case; and we do not perceive why the Service felt it necessary to discuss matters which are not at issue.

The Service stated (motion, pp. 8–9) that a "careful review of the pertinent cases" [not otherwise identified] had failed to reveal any authority in an administrative fine proceeding for a direct attack by a carrier on the basic exclusion proceeding, and that the carrier's remedy is a possible defense of due diligence notwithstanding the fact of a proper exclusion. In a fine proceeding under § 273, there are two defenses open to a carrier—(1) that there has been no violation of the statute which is an absolute defense and (2) that, although the statute was violated, the fine should be remitted or refunded pursuant to § 273(c). The position of the Service seems to be that, as soon as there is a final decision in an exclusion proceeding, this wipes out the first or absolute defense a carrier might have (even though the carrier is not a party to the exclusion proceeding) and from that point the carrier is to be relegated to the possibility of securing remission or refunding of the fine if it can establish the requirements of § 273(c).

As was the case here, the exclusion proceeding would ordinarily be completed before the carrier had had an opportunity to present any evidence in the fine proceeding. The effect of the Service position, in all or most cases, would be to preclude a carrier from offering any evidence to show that there had, in fact, been no violation of the statute. In order to sanction a course so drastic, we would expect the Service to point to some specific authority for depriving a carrier of the possibility of showing that the statute had not been violated, particularly since the provisions relating to the imposition of fines are penal in nature. It is a well-established principle that penal statutes are to be construed strictly. *Federal Communications Commission* v. *American Broadcasting Co.*, 347 U.S. 284, 296 (1954). The Service has not cited any authority to sustain its theory, and we believe there is ample support for a contrary position.

First, the regulation of the Service [8 CFR 280.12] refers to a written defense setting forth the reasons (1) why a fine should not be imposed or (2) if imposed, why it should be mitigated or remitted. Later in the same section there is again a reference to evidence in opposition to the imposition of fine and in support of the request for mitigation or remission. If we were to accede to the present position of the Service, this provision of the regulation authorizing the carrier to present evidence in opposition to the imposition of a fine would be rendered practically meaningless, and the carrier, instead of having two possible defenses, would be limited to a defense only under § 273(c).

In the second place, the "authority", which the Service says is lacking, appears sufficiently in the statute itself. § 273(a) makes it unlawful to bring an alien who does not have an unexpired visa if a visa was required. In order to sustain the imposition of a fine, the record must show that the passenger was an alien; that he did not have an unexpired visa; and that a visa was required. We do not believe it is open to question that no fine could legally be imposed if a carrier presented evidence establishing that a particular passenger was a United States citizen or that he did, in fact, have an unexpired visa or that he did not require a visa, and this would be true irrespective of what might have occurred in the exclusion proceeding. Hence, we can perceive no valid legal basis for precluding a carrier from presenting evidence along that line merely because these facts may have been decided adversely to the passenger in the exclusion proceeding. In the case before us, there is certain evidence showing that the passenger is an alien; that he required a visa; and that he did not have an unexpired visa. However, it is not conclusive evidence that would preclude the carrier from establishing the contrary and the carrier does assert, as a defense, that this particular alien did not require a visa. We do not believe there can be any legal justification for the attempt of the Service to prevent the carrier from offering evidence concerning this defense.

A third matter is that there are judicial decisions which indicate that a conclusion reached in an exclusion proceeding is not necessarily binding in a fine proceeding. *United States* v. *Compagnie Generale Transatlantique*, 26 F. 2d 195 (C.C.A. 2, 1928); *Compagnie Generale Transatlantique* v. *United States*, 78 F. Supp. 797 (Court of Claims, 1948).

In *Matter of Plane CCA CUT 532*, 6 I. & N. Dec. 262 (1954), and in *Matter of Plane CUT 604*, 7 I. & N. Dec. 701 (1958), we held that fines were not incurred under § 273 and that a carrier may assert the defense that a visa was not required. In these cases the exclusion

247

proceeding against the passenger had been predicated on lack of a visa but the passenger was admitted under a standing waiver of the visa requirement published in the regulations. In *Matter of Canadian Pacific Airlines*, 8 I. & N. Dec. 8 (1957), two aliens did not have unexpired visas or other entry documents and such documents *were* required. There, we adopted a view urged by the Service that no fine should be imposed under § 273 of the Immigration and Nationality Act, against a carrier signatory to an Overseas Agreement under § 238 of the Act, for transporting to Canada, destined to the United States, aliens who were returning United States residents or natives of contiguous territory and who were inadmissible solely on documentary grounds. These administrative decisions are, of course, distinguishable from the instant case. However, they illustrate that the decision in an exclusion case is not necessarily controlling in a fine proceeding; that a carrier may assert, as a defense, that § 273(a) was not violated and that a carrier is not restricted to the possibility of asking that the fine should be remitted or refunded under § 273(c).

In view of the foregoing, we believe the conclusion is inescapable that the carrier must be afforded the opportunity of presenting its defense in full. While the exclusion order has become final as to the alien passenger, the findings in that proceeding are not binding on the carrier and cannot be utilized to deprive the carrier of its right to show that there was no violation of § 273(a). Accordingly, we adhere to our previous ruling that the case is not ready for adjudication at this time and must be remanded to the Service to permit the carrier to present its defense in full, including the testimony of the alien passenger to be obtained by means of interrogatories.

**ORDER:** It is ordered that, pursuant to the request of the Service, this case be referred to the Attorney General for review under 8 CFR 3.1(h)(iii).

## BEFORE THE ATTORNEY GENERAL

This case involves the question whether a transportation company, the Holland-America Line, is entitled to the opportunity to submit certain evidence in connection with an administrative proceeding for the imposition of a fine of $1,000 for bringing an alien to the United States in violation of section 273 of the Immigration and Nationality Act, 8 U.S.C. 1323.

Subsection (a) of section 273 makes it unlawful for a transportation company to bring to the United States an alien who does not have an unexpired visa, if a visa is required. Subsection (b) provides that if it appears to the satisfaction of the Attorney General that the alien has been so brought to the United States, the transportation company must pay a fine of $1,000. Subsection (c) provides that the fine may not

be remitted, unless it appears to the satisfaction of the Attorney General that the transportation company prior to the departure of its vessel (or aircraft) from abroad "did not know, and could not have ascertained by the exercise of reasonable diligence that the individual transported was an alien and that a visa was required."

Over the company's protest, the District Director of the Immigration and Naturalization Service imposed a fine against it. On appeal to the Board of Immigration Appeals, the Board withdrew the order imposing the fine and remanded the case to the District Director in order to give the company the opportunity to submit additional evidence. At the request of the Immigration and Naturalization Service, the Board has certified the case to me for review pursuant to 8 CFR 3.1(h)(iii).

Hermanus C. Brons, the alien passenger involved, was admitted to the United States for permanent residence as an immigrant on December 3, 1956. At the time of the arrival involved here, February 20, 1961, he was in possession of a valid Netherlands passport and an Alien Registration Receipt Card (Form I-151). He did not have a visa. However, under 8 CFR 211.1 the Form I-151 would have relieved him from the requirement of a visa if he was returning to an unrelinquished lawful permanent residence after a temporary absence abroad not exceeding one year. An exclusion hearing was held on February 20, 1961. On the basis of Mr. Brons' testimony at the hearing, the special inquiry officer found that Mr. Brons had been abroad for more than one year and that he had within that period relinquished his permanent residence in the United States by emigrating to Canada. Consequently, the officer directed that Mr. Brons be excluded pursuant to section 212(a)(20) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(20), and he was returned to the vessel the same day for deportation. No representative of the company appeared at the exclusion proceeding, and Mr. Brons was represented by a social agency worker.

On March 31, 1961, the District Director sent the company a notice of intention to fine. The company filed a protest in which it stated that it had concluded that Mr. Brons was a permanent resident of the United States because he had a Form I-151 and two letters from his draft board ordering him to report for induction into the Armed Forces. It stated further that it did not know that Mr. Brons was not a lawfully returning resident and could not have established the fact by the exercise of reasonable diligence. The company requested an opportunity to examine Mr. Brons' immigration file and the transcript of the exclusion proceeding, and to cross-examine Mr. Brons. In addition it demanded "a formal due process hearing." The District Director in a decision dated August 25, 1961, denied the company's re-

quest,[1] imposed a fine in the amount of $1,000, and refused to remit the fine on the ground that the company had failed to exercise reasonable diligence.

The company appealed to the Board and, at the hearing before the Board, requested the opportunity to develop additional evidence through written interrogatories to Mr. Brons. The company also submitted to the Board a letter received from its Rotterdam office subsequent to the District Director's decision, setting forth Mr. Brons' version of the entire episode. The Board ordered that the District Director's decision be withdrawn and that the case be remanded to the District Director "to give the carrier an opportunity to submit any additional pertinent evidence it may desire." As stated above, the Service moved for reconsideration, the motion was denied, and at the request of the Service the case was referred to me for review.

Had this case come before me simply as a request to review the Board's initial decision, it would present no problem, for I have no doubt that the Board's discretionary authority under 8 CFR 3.1(d)(1) includes the power to remand a case for the taking of further testimony, whether or not an error of law was committed below. Unfortunately, the motion for reconsideration, the decision on the motion, the request for referral, and the Board's memorandum accompanying the order of referral have resulted in a confusing proliferation of the issues, unjustified by the present posture of the case.

Basically, it is the position of the Service that no further testimony should be taken from Mr. Brons because such testimony can be used only to attack collaterally the determination of the special inquiry officer that Mr. Brons was required to have a visa, and that the carrier is bound by this determination. Furthermore, the Service contends that if the company wishes to develop from Mr. Brons' testimony evidence of its own exercise of due diligence, that factual issue has been "foreclosed" because the Service has from the beginning accepted the company's statement as to what information it was acting on in permitting Mr. Brons to embark. Therefore, the Service reasons, the only question present in this case is whether the conceded facts do or do not establish a claim of due diligence under section 273(c), *supra*, and this question can be determined by the Board on the present record.

The short answer to the latter contention is that inasmuch as the Board does not regard the present record as sufficient for a disposition of the issues of this case, I see no reason why the company should not be afforded an opportunity to present further evidence, either as a

---

[1] It appears that the company's representative was permitted to examine a transcript of the hearing and the other evidence of record at a personal interview held on August 4, 1961, pursuant to 8 CFR 280.12.

matter of discretion or a matter of right.[2]  Furthermore, the Service is evidently proceeding on an inarticulate premise that in making its case for remission under section 273 (c) a carrier is limited to evidence in its possession prior to the time the passenger was permitted to embark, the theory being that no other evidence can be probative of the carrier's diligence.  The difficulty with this theory is that section 273 (c) does not say that the carrier must show that it acted with due diligence in the light of the circumstances known to it at the time, but that it "did not know, and could not have ascertained by the exercise of reasonable diligence that the individual transported was an alien and that a visa was required."  Accordingly, even if the carrier is limited to a defense under section 273(c), it should be permitted to show not only that it acted with diligence in the light of its actual knowledge, but also that if there was a lack of diligence, this did not cause the carrier to be cut off from a line of inquiry which, if pursued, would have led to the conclusion that the passenger was an alien who required a visa.[3]  It is not inconceivable that Mr. Brons' testimony might be relevant to this issue.

The major issue in this case is, of course, whether the company is to be permitted to introduce evidence tending to show that the passenger was not required to have a visa and thus to make what the Service describes as "an unwarranted collateral attack on a duly-entered final order of exclusion."  This is a troublesome question, and I do not believe that it should be decided on hypothetical facts.  On the present record the question is premature.  The company has made no formal offer of proof.  It is not entirely clear what it hopes to elicit from Mr. Brons, and I see no need to act now on the basis of speculation.  In any event, the question whether section 273 (a) was violated is not necessarily inseparable from the question of what the company could have ascertained by the exercise of reasonable diligence.  Certainly, the company should not be precluded from offering evidence on the latter question simply because that evidence might tend to impeach the correctness of the order of exclusion.

The order of the Board is affirmed.

[2] The Board points out in its memorandum accompanying its certification for review that the proceedings before the District Director did not comply with applicable regulations, 8 CFR 280.12, 280.13, 280.14.  The Service has not replied to this contention.  It is not clear whether the Board has based its decision to remand on these errors below or on its discretionary power.  I conclude that the order to remand was appropriate in any event since the Company has not in fact had an opportunity to develop and present evidence which may be relevant to its defense.

[3] For example, if an alien passenger carries a forged United States passport, the carrier should be permitted to show that it could not have detected the forgery by the exercise of reasonable diligence even if in fact the carrier's representatives did not examine the passport at all.