**Joaquin Augusto PEIGNAND, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 7638.**

United States Court of Appeals, First Circuit.

March 10, 1971.

A. G. Hermida, Rio Piedras, Puerto Rico, for petitioner.

Robert W. Nuckles, Atty., Dept. of Justice, with whom Herbert F. Travers, Jr., U. S. Atty., Willie J. Davis, Asst. U. S. Atty., and Paul C. Summitt, Atty., Dept. of Justice, were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

**758**

COFFIN, Circuit Judge.

This appeal raises the question, under the Nationality Act of 1940,[1] 54 Stat. 1137 et seq., whether a child born out of wedlock, subsequently acknowledged by his mother, could automatically derive United States citizenship from the naturalization of his mother. Petitioner, born out of wedlock on January 29, 1936, in the Dominican Republic, was formally acknowledged by his mother a year later. Although the natural father contributed to the child's support until his death in 1944, he never formally acknowledged petitioner as his son, nor did he marry petitioner's mother. The mother came to the United States in about 1937, became a naturalized citizen in 1943, was joined in New York in 1946 by petitioner who lived with her until he returned to the Dominican Republic in 1953. Petitioner last entered the United States on July 30, 1963, as a non-immigrant visitor for business, authorized to stay until September 30, 1963. On March 6, 1964, he was convicted of possession of heroin and sentenced to 5–9 years in prison. Proceedings brought in September, 1964, before a Special Inquiry Officer found petitioner deportable under 8 U.S.C. § 1251(a) (11). Petitioner's June, 1969, motion to reopen was denied, the Board of Immigration Appeals affirmed, and this appeal followed.

It is petitioner's contention that he automatically acquired derivative citizenship through the operation of section 314 of the Nationality Act of 1940, 54 Stat. 1145–1146, relevant portions of which are set out in the margin.[2] On

its face the statutory provision appears to include a person in petitioner's situation: he was born of alien parents outside the United States; his mother, the surviving parent, was naturalized in 1943 when petitioner was seven years old; petitioner began residing permanently in the United States at the age of ten. The statutory scheme, however, also includes a definition of the term "child", section 102(h), 54 Stat. 1138:

> "The term 'child' includes a child legitimated under the law of the child's residence or domicile, whether in the United States or elsewhere * * * provided such legitimation * * * takes place before the child reaches the age of sixteen years and the child is in the legal custody of the legitimating * * * parent or parents."

The major issue on this appeal is whether petitioner was "legitimated" in the Dominican Republic within the meaning of section 102(h). The answer involves a consideration of his precise status under relevant Dominican law and of the leeway, if any, contained in the federal statute.

Under the Civil Code of the Dominican Republic, the petitioner's domicile in 1937 when his mother acknowledged him, the only way to "legitimate" a child born out of wedlock was through the marriage of the natural parents, preceded or accompanied by an official acknowledgement of parentage. Article 331.[3] Admittedly, petitioner's parents were never married; petitioner was never legitimated. As an acknowledged child, however, petitioner did possess the

---

1. Petitioner concedes that the Nationality Act of 1952, under which a person in petitioner's position would automatically derive citizenship, 8 U.S.C. § 1432(a) (3), does not apply to this case. 8 U.S.C. § 1101. Espindola v. Barber, 152 F.Supp. 829, 831, 832 (N.D.Calif.1957).

2. "Sec. 314. A child born outside of the United States of alien parents * * * becomes a citizen of the United States upon fulfillment of the following conditions: * * *
   (b) The naturalization of the surviving parent if one of the parents is deceased * * * and if—

   (d) Such naturalization takes place while such child is under the age of eighteen years; and
   (e) Such child is residing in the United States at the time of the naturalization of the parent * * * or thereafter begins to reside permanently in the United States while under the age of eighteen years."

3. This, apparently, is still the Dominican law. Matter of Doble-Pena, 13 IN— (I.D. 2000, 1969).

right to bear his parent's surname, the right to be considered part of the nuclear family, the right to support and to receive donations up to a certain limit. Articles 57, 385, 756, 908.

The law of the Dominican Republic concerning illegitimacy went through a series of revisions subsequent to the 1937 acknowledgement of petitioner. In 1939 the law was changed so that "Natural filiation established by voluntary acknowledgement produces the same effects of legitimate filiation." Law 121 of May 26, 1939. This statute contained an express nonretroactive clause so as to make the law inapplicable to acknowledgements effected before the date of its promulgation, May 26, 1939. Additional revision was made in 1940, repealing Law 121 of 1939, but expressly limiting the operation of the 1940 law to acknowledgements effected after May 26, 1939. Law 357 of October 31, 1940.

A third and final revision of the law in 1945 equated "natural filiation" and "legitimate filiation" "with the exception of the distinctions made in matters concerning successions". Law 985 of August 31, 1945. This statute, however, did not contain a non-retroactive clause. The practice in the preceding revisions, as noted above, had been to include such a provision if non-retroactivity was the intent of the law-making body.[4] On the other hand, Article 2 of the Civil Code states that "the Law provides only for the future, it does not have retroactive effects." Counsel for petitioner resourcefully argues that departure from a fixed practice of specifying non-retroactivity should outweigh the Code's general prescription of prospectivity.

We find it unnecessary to engage in an assessment of the retroactivity of Law 985. Even if this law were to apply to petitioner, it is clear that, unlike the two earlier revisions which unqualifiedly equated acknowledgement and legitimate filiation, Law 985 recognizes some differences in matters of succession. The question therefore is whether an acknowledged child, possessing most but not all of the filial rights of a fully legitimated child, falls within the federal statutory category of "legitimated".

The legislative history of sections 102(h) and 314 of the Act of 1940 suggests, however, that it was Congress' primary intent to remove the uncertainty then prevailing in the area of derivative citizenship. Neither the 1902 statute, 34 Stat. 1229, nor the 1934 revision, 48 Stat. 797, contained a provision defining "child". Representative Rees, Chairman of the subcommittee that drafted the 1940 Act, stated on the House floor that under the prior law "it is impossible to say with any degree of certainty what the law actually is on the subject of naturalization of minors through the naturalization of their parents." 86 Cong.Rec. 11947. The purpose of the 1940 alterations in the law, as noted by Representative Rees, was to make sure that the law was "stated in such a manner that individuals interested would be able to ascertain whether or not they are citizens of the United States." 86 Cong.Rec. 11947. The Congressional goal was to create a bright-line test so that those who fell without the derivative citizenship provision could recognize that fact and would be able to petition for citizenship on their own under other sections of the law of naturalization. 54 Stat. 1140–1144.

The Congressional purpose of adding certainty to the law of derivative citizenship requires a strict reading of the provisions in question. Section 102(h) states that an illegitimate child must be legitimated to effect derivative citizenship.[5] To read the term "child"

4. The respondent reports that no provisions, cases or commentaries construing the 1945 law have been located.

5. A 1950 Senate Report, No. 1515, 81st Congress, 2d Session, p. 708, described the state of the law under the 1940 Act as follows:

"Under the Nationality Act a child born out of wedlock, who has not been legitimated, does not derive U. S. citi-

to include a person with substantially but not all the rights of a legitimated child would be to add an expansive gloss directly contrary to the Congressional goal of definiteness.[6]  A person can determine with certainty whether he has been "legitimated" before the age of 16. Whatever the appropriate interpretation of the successive revisions of Dominican Republic law, at no time was that law altered so as to "legitimate" petitioner. Therefore, we conclude that petitioner was not an intended "child" beneficiary of derivative citizenship within section 314.

We have found no judicial precedent directly facing the question of the automatic derivative citizenship of an acknowledged, but not legitimated, child under the 1940 Act.  The case primarily relied upon by respondent, Espindola v. Barber, 152 F.Supp. 829 (N.D.Calif. 1957), concerned a totally illegitimate child with no mention of a parental acknowledgement.  On the other hand, petitioner's proposed precedent, Compagnie General Transatlantique v. United States, 78 F.Supp. 797, 111 Ct.Cl. 601 (1948), concerned an interpretation of the 1934 Act which, as was noted by that court, did not contain a limiting definition of "child".[7]  We find nothing in these decisions which lead us to a contrary resolution of the present controversy.

We would add that this strict reliance on the letter of domiciliary law seems to have consistently characterized the decisions of the Board of Immigration Appeals, sometimes to the disadvantage of the foreign born child, see, e. g., Matter of C–, 9 IN 242 (1961) ; Matter of C–, 9 IN 597 (1962), and sometimes to his advantage, Matter of B–S–, 6 IN 305 (1955).

There is one additional point worthy of passing notice.  In 1953, after petitioner had resided in the United States for seven years, he was issued a United States passport.  A question arises whether the respondent is in some way estopped from denying petitioner's citizenship because of the issuance of the passport.

■ We note first the ancient and durable judicial precedent to the effect that a passport is not "competent evidence of the fact of citizenship." Urtetiqui v. D'Arcy, 9 Pet. 692, 34 U.S. 692, 699, 9 L.Ed. 276 (1835).  Miller v. Sinjen, 289 F. 388, 394 (8th Cir. 1923) ; Gillars v. United States, 87 U.S.App.D.C. 16, 182 F.2d 962, 981 (1950).  Such a conclusion is in accord with statutory law effective at the time petitioner was issued his passport.  22 U.S.C. § 212. Under its terms, to obtain a passport one does not have to be a citizen but merely owe his allegiance to the United States.

---

zenship through the naturalization of the putative father.  Neither does he derive citizenship through the mother even though for other purposes of the law she is the sole parent."

6. That no leeway is permitted in applying the standard is clearly recognized by Gordon and Rosenfield, Immigration Law and Procedure, Rev. ed., § 2.18b, at p. 2–94:

"In order to determine whether legitimation has transpired it is necessary, therefore, to consult the law of the applicable place of residence or domicile. It should be noted, moreover, that such laws often provide for other processes which do not bestow full status as a legitimate child.  Thus legitimation did not result from adoption,[61] acknowledgement of paternity,[62] or formal declaration of affiliation,[63] where such meas-

ures did not accomplish legitimation under local law."  [Footnotes omitted.]

7. Petitioner also notes two further decisions, Petition of Sadin, 100 F.Supp. 14 (S.D.N.Y.1951) and Petition of Howard, 147 F.Supp. 676 (W.D.Mo.1956), in which illegitimate children were allowed to obtain citizenship upon petition of their naturalized parents under section 315 of the 1940 Act and section 322 of the 1952 Act, respectively.  The Sadin decision, however, ignores the definitional section 102(h) which also covers the application of section 315.  The Howard court, however, did recognize in dictum the change in the law effected by the 1952 Act, stating that automatic derivative citizenship was "not possible under the [1940] law" for an illegitimate child.  147 F.Supp. at 677.

The doctrine of estoppel, assuming it can operate at all against the government, *cf.* Montana v. Kennedy, 366 U.S. 308, 315, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961), is not applicable here. The respondent did not lead "petitioner to any course of action which he would not otherwise have taken, or [lead] him to change his situation in any way, whether to his detriment or otherwise." Talanoa v. I. N. S., 397 F.2d 196 (9th Cir. 1968). The facts of the present case do not rise to the level of estoppel.[8] *See, cf.* Podea v. Acheson, 179 F.2d 306 (2d Cir. 1950); Lee You Fee v. Dulles, 236 F.2d 885 (7th Cir. 1956).

Affirmed.

8. After returning to the Dominican Republic in 1953 petitioner worked for the Dominican Government in several capacities (including a period at the Dominican Consulate in New York during which time he traveled on a Dominican Republic diplomatic passport), and, as a citizen of that country, voted in local elections. By virtue of this activity, the Department of State issued a certificate of loss of citizenship to petitioner on May 22, 1957. While, as the government concedes, such a certificate is ineffective to deprive petitioner of citizenship, Afroyim v. Rusk, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967), the action is consistent with the government's present position.