## Miguel Noel FIERRO, Petitioner,

v.

## IMMIGRATION & NATURALIZATION SERVICE, Respondent.

### No. CIV. A. 99-11556-WGY.

United States District Court,
D. Massachusetts.

Dec. 22, 1999.

Matthew S. Robinowitz, Fitchburg, MA, for Miguel Noel Fierro, Petitioner.

Miguel Noel Fierro, Manchester, NH, Pro se.

Frank Crowley, Immigration & Naturalization, Special Assistant US Attorney, Boston, MA, for Immigration & Natura, Respondent.

### ORDER

YOUNG, Chief Judge.

I. *Introduction*

Consider this famous exchange from Robert Bolt's, *A Man For All Seasons:*

> Roper: So now you'd give the Devil benefit of law!
>
> More: Yes. What would you do? Cut a great road through the law to get to the Devil?
>
> Roper: I'd cut down every law in England to do that!
>
> More: Oh? And when the last law was down, and the Devil turned round on you -- where would you hide, Roper, the laws all being flat? This country's planted thick with laws from coast to coast -- man's laws, not God's -- and if you cut them down -- and you're just the man to do it -- d'you really think you could stand upright in the winds that would blow then? Yes, I'd give the Devil benefit of law, for my own safety's sake.

Robert Bolt, *A Man for All Seasons* 66 (1962).

In recent years, Congress has been busily "cutting down" the procedural protections of our laws as they may relate to resident aliens, the better swiftly to deport those whom it considers undesirable due to certain prior criminal convictions.

Now consider this hypothetical case: An *American* ex-convict, having done his time, is taken into custody by agents of the Immigration and Naturalization Service ("INS") and jailed for over two years (and counting) without ever being arraigned before a neutral magistrate or having a chance to seek bail. During his imprisonment no lawyer may be appointed for him and he is denied the right possessed by all other Americans wrongfully detained to apply for a writ of habeas corpus in a United States District Court. Instead, he is subjected to a series of administrative examinations by agents of the Executive with the goal of sending him into permanent exile beyond our borders.

Is this case the hypothetical just described? That is the enormously important and potentially tragic issue here presented, i.e. "[I]f you cut [the laws] down - d'you really think [an American can] stand upright in the winds that would blow then?"

The present petition, brought by Miguel Noel Fierro ("Fierro"), offers a colorable claim of nationality by one who has been scheduled for removal by the INS. Because of the actions of Congress in the Antiterrorism and Effective Death Penalty Act (the "AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act (the "IIRIRA"), this Court may not have subject matter jurisdiction to hear Fierro's claim, at least not until the Court of Appeals agrees with this Court that a grave risk of error is presented by the Government's actions.

## II. *The Government's Motion for Summary Judgment*

Removal proceedings were instituted by the INS against Fierro on August 6, 1997. Fierro defended on the ground that he is an American citizen because his father was naturalized before Fierro attained the age of eighteen. *See* 8 U.S.C. § 1432(a). The Board of Immigration Appeals (the "Board") rejected this argument, finding that Fierro reached the age of eighteen before his father was naturalized, thereby rendering him ineligible for citizenship under 8 U.S.C. § 1432(a). This finding was in error. Fierro was only sixteen at the time that his father was naturalized, placing him well within what the Government calls "the 'window of opportunity' to gain derivative citizenship." U.S. Mem. at 6. The consequences of this error deserve far greater consideration than the Government seems willing to admit: Imagine for a moment the agony of living one's life in exile, knowing that the decision to deport hinged, at least partially, on an error of basic arithmetic. Kafka himself would recoil at such a blunder.

The Government concedes the mathematical mistake, *see* U.S. Mem. at 6, but waves it aside. The Government argues that Fierro is ineligible under 8 U.S.C. § 1432(a) for the separate reason that, at the time of his father's naturalization, his mother had "legal custody" of him pursuant to an order of the Massachusetts probate court issued on October 19, 1973. For purposes of this motion, the parties agree that, at the time of his father's naturalization, Fierro was living with his father and depended upon him for support. In recognition of these facts, the Massachusetts Probate and Family Court issued a revised custody order granting legal custody to Fierro's father. That order was issued on May 18, 1998, but was made retroactively applicable "to September 1, 1977," several months *before* Fierro's father was naturalized.

The question of whether the Government will be allowed to deport Fierro therefore hinges upon whether citizenship is determined with reference to the first or the second order of the Massachusetts Court. The Government believes that Fierro's citizenship must be determined by ref-

erence to the law and facts that existed at the time of his father's naturalization, even if the Massachusetts Court later determines that its first order was inaccurate based upon the actual facts that existed at the time. In support of this argument, however, the Government cites cases holding only that the citizenship determination is not altered by subsequent changes in generally applicable legislation. *See Montana v. Kennedy*, 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961) (federal immigration law in force at time of petitioner's birth applied, absent express retroactivity in subsequent legislative alterations). The Government draws extensive language from *Peignand v. Immigration & Naturalization Serv.*, 440 F.2d 757 (1st Cir. 1971), but neglects to mention that the First Circuit ultimately refused to decide whether later changes in Dominican law regarding the definition of a "child" could impact the citizenship analysis. *See id.* at 760 (ruling that petitioner failed to meet definition of "child" regardless of which version of Dominican law was held to be controlling).

Moreover, it seems quite possible to this Court that Fierro might not be deportable even if the Government's general proposition is true. That is, the Government may be absolutely correct that "the law in effect when the last material condition (e.g., naturalization, age, residence) is met is controlling." U.S. Mem. at 11 (*quoting* 4 Gordon & Mailman, *Immigration Law and Proc.* [Rev. Ed. 1994] § 98.03[4][a]). That principle, however, simply means that 8 U.S.C. § 1432(a) must have been in force in 1978 when Fierro's father was naturalized. The Government concedes that it was. *See* U.S. Mem. at 7 n.5. The separate question of what force to give a particularized determination by the Massachusetts Probate and Family Court - case and fact-specific to Fierro's unique situation - is not answered by the Government's cases. In

light of the state's historical role as the exclusive (and expert) regulator of probate matters, *see Ex parte Burrus*, 136 U.S. 586, 593-594, 10 S.Ct. 850, 34 L.Ed. 500 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States."), it seems quite natural to this Court that deference should be given to the probate court's second, revised determination.

■ Thus, given the arguable nature of the determinant legal question in this case, a very real risk exists that the Government is wrongfully attempting to deport a citizen of the United States.[1]

### III. *Subject Matter Jurisdiction*

■ The Government, however, has another card up its sleeve - the trump card created by Congress through the AEDPA and the IIRIRA. Those acts amended the Immigration and Nationality Act ("INA") to severely restrict the authority of federal district courts to entertain challenges by persons subject to removal orders. The First Circuit, however, has held that the AEDPA's repeal of the INA provision recognizing habeas as a remedy for aliens in custody was not an affirmative ban on habeas jurisdiction. *See Goncalves v. Reno*, 144 F.3d 110, 121 (1st Cir.1998). This Court earlier rejected the Government's argument that the Supreme Court's intervening opinion in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) undermined *Goncalves. See Fierro v. Immigration & Naturalization Serv.*, 66 F.Supp.2d 229 (D.Mass. 1999). The First Circuit has since confirmed that view. *See Wallace v. Reno*, 194 F.3d 279, 285 (1st Cir.1999) ("[N]othing in *American-Arab* directly precludes deportees ... from challenging their final deportation orders through habeas ....").

---

1. Wrongful because the Government must institute denaturalization proceedings before deporting a citizen. *See* 8 U.S.C. § 1451.

This Court's earlier assertion that it retained habeas jurisdiction over Fierro's claim, however, did not address the fact that his claim is governed by the permanent, rather than the transitional, rules established by the AEDPA and the IIRIRA. Under the transitional rules, certain categories of deportees were afforded no judicial review whatsoever, a legal scheme whose dubious constitutionality caused the First Circuit to rule that habeas jurisdiction still existed in the federal district court under the transitional rules. *See Goncalves*, 144 F.3d at 122. Under the permanent rules, however, deportees such as Fierro may seek review of their claims in the Court of Appeals. *See* 8 U.S.C. § 1252(b)(5)(A); *Rosas-Paniaqua v. Reno*, 76 F.Supp.2d 1060, 1062 (N.D.Cal. 1999) ("Under the AEDPA and IIRIRA the appropriate forum for petitioner's challenge to his final deportation is not the district court but the court of appeals."); *see also* 8 U.S.C. § 1252(a)(1). Whether that distinction between the transitional and permanent rules will satisfy the First Circuit's constitutional concerns about withdrawal of habeas jurisdiction remains to be seen. *See Prado v. Reno*, 198 F.3d 286, 287 (1st Cir.1999) (noting that "[m]uch of the logic of our analysis" for jurisdictional issues under transitional rules applies under permanent rules as well). Neither party in this case has addressed the issue.

### IV. *Conclusion*

It seems to this Court, then, that the most prudent course to take is to present Fierro's dilemma to the Court of Appeals in the manner that it ordinarily would have arisen under 8 U.S.C. § 1252(b)(5)(A). Pursuant to that provision, the Court of Appeals is to decide whether Fierro's case presents a "genuine issue of material fact about [his] nationality." *Id.* If the court concludes that such an issue is present, it "shall [re]transfer the proceeding to the district court ...." 8 U.S.C. § 1252(b)(5)(B).

Thus, the Government's motion for summary judgment is DENIED [Docket # 26]. Because Fierro's case should have been presented initially to the Court of Appeals, this Court takes the further (and admittedly unusual) step of certifying the denial of the Government's motion to the Court of Appeals under 28 U.S.C. § 1292(b). In that manner, the Court of Appeals can perform its statutorily-mandated gatekeeper function under 8 U.S.C. § 1252(b)(5)(A) without multiplying both litigant and judicial effort by requiring Fierro to file a separate petition.

SO ORDERED.