**Angela Morris Amado ROCHA,**
**Petitioner,**

v.

**IMMIGRATION & NATURALIZATION**
**SERVICE, Respondent.**

**No. 6505.**

United States Court of Appeals
First Circuit.

Heard Sept. 13, 1965.

Decided Oct. 14, 1965.

Martin T. Camacho, Boston, Mass., for petitioner.

John M. Callahan, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for respondent.

Before ALDRICH, Chief Judge, J. WARREN MADDEN, Senior Judge,* and JULIAN, District Judge.

ALDRICH, Chief Judge.

This is a petition to review a judgment of the Board of Immigration Appeals affirming a denial of a certificate of citizenship and an order of deportation. The case presents the question whether a statute that was repealed in 1922 was unconstitutional so far as it affected the citizenship of the petitioner. The facts are undisputed. Petitioner's mother was born in this country in 1901. In 1916 she married a Portuguese citizen and subsequently moved, apparently permanently, to Portugal. Petitioner was born in Portugal in 1931. Her father was a Portuguese citizen, but was not her mother's husband. Her mother was divorced in 1932. Petitioner first came to this country in 1961.

* Sitting by designation.

By Act of March 2, 1907, ch. 2534, § 3, 34 Stat. 1228, petitioner's mother by marrying a foreign national, lost her United States citizenship and acquired that of her husband.[1] This law was repealed by Act of September 22, 1922, ch. 411, § 7, 42 Stat. 1022, but not retroactively. If born abroad to two foreign nationals petitioner obviously was not a United States citizen merely because her mother had once been one. Indeed, it is conceded that in 1931 petitioner would not have been a United States citizen even if her mother had retained her citizenship. Petitioner's claim, so far as we could find it to have any merit, is based upon the Nationality Act of 1940, ch. 876, § 205, 54 Stat. 1139, which stated that persons in petitioner's status are "held to have acquired at birth[2] * * [the] nationality status" of the mother. This statute was repealed by the Act of June 27, 1952, ch. 477, § 403, 66 Stat. 280, but not retrospectively. Id., section 405(c).

Necessarily underlying the applicability of the 1940 Act to the petitioner is the contention that section 3 of the 1907 Act, in depriving her mother of citizenship on marriage, was unconstitutional. In Mackenzie v. Hare, 1915, 239 U.S. 299, 36 S.Ct. 106, 60 L.Ed. 297, a unanimous court upheld its constitutionality. It is true that this unanimity has not characterized the decisions of the last decade upholding Perez v. Brownell, 1958, 356 U.S. 44, 78 S.Ct. 568, 2 L.Ed.2d 603 (5-to-4; four opinions); Marks v. Esperdy, 1964, 377 U.S. 214, 84 S.Ct. 1224, 12 L. Ed.2d 292 (4-to-4), or holding unconstitutional, Trop v. Dulles, 1958, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (5-to-4; four opinions); Kennedy v. Mendoza-

Martinez, 1963, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (5-to-4; four opinions); Schneider v. Rusk, 1964, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (5-to-3), congressional expatriation legislation. No majority has questioned the authority of Mackenzie, however, and, indeed, it has been relied upon in several recent decisions. Perez v. Brownell, supra; Savorgnan v. United States, 1950, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287; see also Kennedy v. Mendoza-Martinez, supra, 372 U.S. at 187, 83 S.Ct. 554; cf. Perez v. Brownell, supra, 356 U.S. at 69–73, 78 S.Ct. 568 (Warren, C. J., dissenting).

Petitioner relies principally on Schneider v. Rusk, supra, for the proposition that Mackenzie is no longer law. The statute considered in Schneider was directed solely to naturalized citizens, and certainly basic to the decision was the court's condemnation of this discrimination. It is true that the dissenting opinion expressed the view that the reasoning of the court extended *a fortiori* to the 1907 Act upheld in Mackenzie. The opinion of the court did not mention the earlier case, however.

It is clear that the decision itself in Schneider did not overrule Mackenzie. It is likewise apparent from the cases cited above that the limits of congressional authority to deprive citizens of their nationality have yet to be defined. We do not feel we should attempt to be the catalyst when to do so would involve express departure from a case which has never, in a majority opinion of the court, been questioned.

Petitioner's other points do not warrant discussion.

Affirmed.

1. "Sec. 3. That any American woman who marries a foreigner shall take the nationality of her husband. At the termination of the marital relation she may resume her American citizenship, if abroad, by registering as an American citizen within one year with a consul of the United States, or by returning to reside in the United States, or, if residing in the United States at the termination of the marital relation, by continuing to reside therein."

2. This enactment is unusual in that it does not make residence in the United States before the foreign-born minor reaches a certain age a condition of citizenship. Compare prior act, Act of May 24, 1934, § 5, 48 Stat. 797, and the 1952 Act, 8 U.S.C. § 1401(b).