UNITED STATES of America,
Plaintiff, Appellant,

v.

LUCIENNE D'HOTELLE de BENITEZ
REXACH et al., Defendants, Appellees.

No. 76–1117.

United States Court of Appeals,
First Circuit.

Argued Feb. 11, 1976.

Decided June 20, 1977.

John McCarthy, Atty., Tax Division, Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., Julio Morales Sanchez, U. S. Atty., Jose A. Anglada, Asst. U. S. Atty., San Juan, P. R., Gilbert E. Andrews and Crombie J. D. Garrett, Attys., Tax Division, Dept. of Justice, Washington, D. C., were on brief, for plaintiff, appellant.

Roberto Buso Aboy, Santurce, P. R., for Maria Benitez Rexach Vda. de Andreu, defendant, appellee.

Rene Benitez pro se., and for Felix Benitez and Haydee Benitez, defendants, appellees.

Before COFFIN, Chief Judge, INGRAHAM, Circuit Judge *, CAMPBELL, Circuit Judge.

INGRAHAM, Circuit Judge.

This case and related lawsuits reflect the United States' efforts to tax income earned in the 1940's and 1950's by Felix Benitez Rexach, husband of Lucienne D'Hotelle de Benitez Rexach.[1] The deaths of Lucienne and Felix have not halted the litigation. We hold that the district court erred in

---

* Of the Fifth Circuit, sitting by designation.

1. The controversy can be followed, if not completely understood, in the reported cases: *United States v. Rexach,* 185 F.Supp. 465 (D.P.R. 1960); *United States v. Rexach,* 200 F.Supp. 494 (D.P.R.1961); *United States v. Rexach,* 41 F.R.D. 180 (D.P.R.1966); *Rexach v. United States,* 390 F.2d 631 (1st Cir.), *cert. denied,* 393 U.S. 833, 89 S.Ct. 103, 21 L.Ed.2d 103 (1968); *United States v. Rexach,* 331 F.Supp. 524 (D.P. R.1971), *vacated and remanded,* 482 F.2d 10 (1st Cir.), *cert. denied,* 414 U.S. 1039 (1973); *United States v. Rexach,* 411 F.Supp. 1288 (D.P.R.1976).

ruling that Lucienne was not liable for taxes on one-half the income earned by Felix from November 10, 1949 to May 20, 1952. We do not disturb the refusal of the district court to dismiss Maria Benitez Rexach Viuda de Andreu as a party defendant.

## FACTS

Lucienne D'Hotelle was born in France in 1909. She became Lucienne D'Hotelle de Benitez Rexach upon her marriage to Felix in San Juan, Puerto Rico in 1928. She was naturalized as a United States citizen on December 7, 1942. The couple spent some time in the Dominican Republic, where Felix engaged in harbor construction projects. Lucienne established a residence in her native France on November 10, 1946 and remained a resident until May 20, 1952. During that time § 404(b) of the Nationality Act of 1940 [2] provided that naturalized citizens who returned to their country of birth and resided there for three years lost their American citizenship. On November 10, 1947, after Lucienne had been in France for one year, the American Embassy in Paris issued her a United States passport valid through November 9, 1949. Soon after its expiration Lucienne applied in Puerto Rico for a renewal. By this time she had resided in France for three years. Nevertheless, the Governor of Puerto Rico renewed her passport on January 20, 1950 for a two year period beginning November 10, 1949. Three months after the expiration of this passport, Lucienne applied to the United States Consulate in Nice, France for another one. On May 20, 1952, the Vice-Consul there signed a Certificate of Loss of Nationality, citing Lucienne's continuous resi-

dence in France as having automatically divested her of citizenship under § 404(b). Her passport from the Governor of Puerto Rico was confiscated, cancelled and never returned to her. The State Department approved the certificate on December 23, 1952. Lucienne made no attempt to regain her American citizenship; neither did she affirmatively renounce it.

In October 1952 the Dominican Republic (then controlled by the dictator Rafael Trujillo) extended citizenship to Lucienne retroactive to January 2, 1952. Trujillo was assassinated in May 1961. The provisional government which followed revoked Lucienne's citizenship on January 20, 1962. On June 5, 1962 the French government issued her a passport.

For the years 1944 to 1958, Felix earned millions of dollars from harbor construction in the Dominican Republic. He was aided by Trujillo's favor and by his own undeniable skills as an engineer. Felix, an American citizen since 1917,[3] was sued by the United States for income taxes. The court held that Lucienne had a vested one-half interest in Felix's earnings under Dominican law, which established that such income was community property. Since the law of the situs where the income was earned determined its character, Felix could be sued only for his half of the earnings. *United States v. Rexach,* 185 F.Supp. 465 (D.P.R. 1960).

Predictably, the United States eventually sought to tax Lucienne for her half of that income. Whether by accident or design, the government's efforts began in earnest shortly after the Supreme Court invalidated

---

**2.** Section 404(b) of the Nationality Act of 1940, 54 Stat. 1170, 8 U.S.C. § 804(b) (1946), provided:

"A person who has become a national by naturalization shall lose his nationality by:

. . . . .

(b) Residing continuously for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, except as provided in section 406 hereof."

**3.** Felix was born in Puerto Rico on March 27, 1886. He became an American citizen under

the Puerto Rico Organic Act of 1917, § 5, 39 Stat. 953. He was denaturalized on July 14, 1958 under § 349(a) of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1481(a). *See United States v. Rexach,* 185 F.Supp. 465, 467 (D.P.R.1960). However, the Board of Review on the Loss of Nationality later determined that the events which led to denaturalization were the result of coercion by Trujillo. It adjudged the denaturalization to be void *ab initio. See United States v. Rexach,* 331 F.Supp. 524, 527 (D.P.R.1971).

the successor statute [4] to § 404(b). In *Schneider v. Rusk,* 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964), the Court held that the distinction drawn by the statute between naturalized and native-born Americans was so discriminatory as to violate due process. In January 1965, about two months after this suit was filed, the State Department notified Lucienne by letter that her expatriation was void under *Schneider* and that the State Department considered her a citizen. Lucienne replied that she had accepted her denaturalization without protest and had thereafter considered herself not to be an American citizen.

Lucienne died on January 18, 1968. During her lifetime, Felix, as administrator of the marital community, retained and administered the community property, including Lucienne's share of the income earned in the Dominican Republic. Upon her death Felix did not return her share to the estate, but retained it. Lucienne's will named Maria Benitez Rexach Viuda de Andreu as executrix and Felix as sole beneficiary.

Lucienne's attorney officially notified the district court of Lucienne's death on October 25, 1973. The United States moved successfully to amend the complaint to add Maria and Felix as parties defendant. The amended complaint was filed on December 3, 1973. Maria failed to answer the complaint despite valid service of process. Default was entered against her on December 23, 1974. On April 14, 1975 Maria obtained an order from the Superior Court of Puerto Rico dismissing her as executrix. Her petition to that court included the admission that she had filed a tax return for the estate. The United States District Court denied her subsequent motion for dismissal as a party defendant.

The district court found that Lucienne was liable for taxes on her half of Felix's income from 1944 through November 9, 1949 in an amount to be computed in accordance with a stipulation of the parties. The court also found that Felix was obligated to pay this amount because (1) he was administrator of the marital community, (2) he had retained control and possession of the community property, thus making him a transferee at law of property subject to federal tax liens, and (3) he had tortiously converted property subject to federal tax liens. The district court absolved Lucienne of liability for taxes on income earned after November 9, 1949. Felix died on November 18, 1975. The United States filed a notice of death and moved to add Maria and Ramon Rodriguez as defendants in their capacities as co-executors of Felix's will. The motion was granted.

The United States appealed the denial of liability for the period November 10, 1949 to May 20, 1952. With this lengthy but skeletal summary we proceed to the merits.

## LUCIENNE'S CITIZENSHIP

The government contends that Lucienne was still an American citizen from her third anniversary as a French resident until the day the Certificate of Loss of Nationality was issued in Nice. This case presents a curious situation, since usually it is the individual who claims citizenship and the government which denies it. But pocketbook considerations occasionally reverse the roles. *United States v. Matheson,* 532 F.2d 809 (2nd Cir.), *cert. denied* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976). The government's position is that under either *Schneider v. Rusk, supra,* or *Afroyim v. Rusk,* 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967), the statute by which Lucienne was denaturalized is unconstitutional and its prior effects should be wiped out. *Afroyim* held that Congress lacks the power to strip persons of citizenship merely

---

**4.** Section 352(a) of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1484(a), provided, in pertinent part:

"(a) A person who has become a national by naturalization shall lose his nationality by—

(1) having a continuous residence for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated . . . .."

because they have voted in a foreign election. The cornerstone of the decision is the proposition that intent to relinquish citizenship is a prerequisite to expatriation.⁴

■■■ Section 404(b) would have been declared unconstitutional under either *Schneider* or *Afroyim.* The statute is practically identical to its successor, which *Schneider* condemned as discriminatory. Section 404(b) would have been invalid under *Afroyim* as a congressional attempt to expatriate regardless of intent. Likewise it is clear that the determination of the Vice-Consul and the State Department in 1952 would have been upheld under then prevailing case law, even though Lucienne had manifested no intent to renounce her citizenship. *Mackenzie v. Hare,* 239 U.S. 299, 36 S.Ct. 106, 60 L.Ed. 297 (1915). *Accord, Savorgnan v. United States,* 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287 (1950). *See also Perez v. Brownell,* 356 U.S. 44, 78 S.Ct. 568, 2 L.Ed.2d 603 (1958), *overruled, Afroyim v. Rusk, supra.*

We think the principles governing retrospective application dictate that either *Schneider* or *Afroyim* apply to this case.⁵ This circuit has applied *Afroyim* retroactively. *Rocha v. Immigration and Naturalization Service,* 450 F.2d 946 (1st Cir. 1971) (*per curiam*), *withdrawing prior opinion,* 351 F.2d 523 (1st Cir. 1965). Angela Rocha was born in Portugal in 1931. Her mother, a native American had married a Portuguese citizen in 1916 and moved to his homeland. Under the law then in effect Angela's mother was automatically divested of American citizenship by marrying a foreign national. Thus Angela was the daughter of two foreign nationals and, in the pre-*Afroyim* era, not an American citizen. In 1965 this court upheld the decision of the Board of Immigration Appeals that Angela was not a citizen. 351 F.2d 523. Upon granting a motion for reconsideration, the court held that *Afroyim* "clearly refutes" the notion that an American citizen can be involuntarily expatriated. 450 F.2d at 947.

Thus Angela's mother was a citizen when Angela was born in 1931 and, since any procedural deficiencies were thereby cured, Angela was entitled to citizenship.

Although *Rocha* appears to be precisely on point, it involved a live person who wished to be an American citizen. The case mentions no benefits or duties dependent upon Angela's status for the first forty years of her life. In the case we now consider, however, the focus of the inquiry is whether Lucienne *was* a citizen. Thus in *Rocha* retrospective application of *Afroyim* was expected to have only prospective effect. A declaration that Lucienne was a citizen will have substantial retrospective effect. In light of her death, future benefits of citizenship cease to be a factor. This distinction justifies more complete treatment of the issue.

■■ Retroactive application of constitutional decisions is not automatic. *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329 (1940). The Supreme Court has opted for a flexible approach. In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court reviewed retroactivity theory from the time of Blackstone, concluding that a court should "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." 381 U.S. at 629, 85 S.Ct. at 1738. The Court applied these principles to conclude that *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should not be applied retrospectively because (1) the states had relied upon *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), (2) deterrence would not be served by retrospective application, and (3) the administration of justice would be disrupted. 381 U.S. at 636–40, 85 S.Ct. 1731. Equitable principles control in deciding whether cases should be applied retrospectively. *Cipriano v. City of Houma,* 395

---

**5.** We need not choose which decision should be given retrospective effect, since the principles discussed dictate the same result for either.

**42**

U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (*per curiam*).

> "In equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests, notwithstanding that those interests have constitutional roots."

*Lemon v. Kurtzman,* 411 U.S. 192, 201, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973) (Burger, C. J., for a four justice majority).

■ The district court accurately summarized the law:

> "[T]he general principles that govern retroactivity should be applied on a case by case basis taking into consideration such factors as the reliance placed by the parties on the legislation in question, the balancing of the equities of the particular situation, and the foreseeability or lack thereof, that the legal doctrine or statute in question would be declared unconstitutional."

411 F.Supp. at 1293. However, the district court went too far in viewing the equities as between Lucienne and the government in strict isolation from broad policy considerations which argue for a generally retrospective application of *Afroyim* and *Schneider* to the entire class of persons invalidly expatriated. *Cf. Linkletter v. Walker, supra.* The rights stemming from American citizenship are so important that, absent special circumstances, they must be recognized even for years past. Unless held to have been citizens without interruption, persons wrongfully expatriated as well as their offspring might be permanently and unreasonably barred from important benefits.[6] Application of *Afroyim* or *Schneider* is generally appropriate.

■ Of course, American citizenship implies not only rights but also duties, not the least of which is the payment of taxes. *Cook v. Tait,* 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895 (1924). And were *Schneider* or

*Afroyim* used to compel payment of taxes by all persons who mistakenly thought themselves to have been validly expatriated, the calculus favoring retrospective application might shift markedly. We do think that the balance of the equities mandates that back income taxes be collectible for periods during which the involuntarily expatriated persons affirmatively exercised a specific right of citizenship. This is precisely the position taken by the Internal Revenue Service.[7] As to such periods, neither the government nor the expatriate can be said to have relied upon the constitutionality of § 404. Since the expatriate in fact received benefits of citizenship, the equities favor the imposition of federal income tax liability. *Cf. Rexach v. United States,* 390 F.2d 631 (1st Cir. 1968).

We now focus upon Lucienne's status. The years for which the government sought to collect taxes can be divided into three discrete periods: 1944 through November 9, 1949; November 10, 1949 through May 20, 1952; and May 21, 1952 through 1958. The district court's ruling that Lucienne was liable for taxes during the first period is not appealed. The district court refused to distinguish between the two remaining periods.

■ During the interval from late 1949 to mid-1952, Lucienne was unaware that she had been automatically denaturalized. In fact, she applied for, obtained and used an American passport for most of that period. On the passport application she stated that her travel outside the United States had consisted of "vacations," and her signature appeared below an oath that she had neither been naturalized by a foreign state nor declared her allegiance to a foreign state. Her subsequent application on February 11, 1952, which was eventually rejected, included an affidavit in which she stated that her mother's death and other business obligations caused her to remain in France.

---

6. For example, if expatriation was void *ab initio,* the reinstated citizen will have the satisfaction of knowing that children born in the interim will have the right to become citizens. 8 U.S.C. §§ 1431, 1433, 1434. *Cf. Rocha v. Immi-*gration and Naturalization Service, 450 F.2d 946 (1st Cir. 1971) (*per curiam*).

7. Rev.Rul. 75–357, 1975–34 Int.Rev.Bull. 8; Rev.Rul. 70–506, 1970–2 Cum.Bull. 1.

Ironically, on that same application, the following line appears:

"I (do/do not) pay the American Income Tax at _____."

Lucienne scratched out the words "do not" and filled in the blank with "San Juan, Puerto Rico."

As late as February 1952 Lucienne regarded herself as an American citizen and no one had disabused her of that notion. The Vice-Consul reported that Lucienne had told him "she was advised (by the State Department) that she could remain in France without endangering her American citizenship."

Fairness dictates that the United States recover income taxes for the period November 10, 1949 to May 20, 1952. Lucienne was privileged to travel on a United States passport; she received the protection of its government.

 · Although the government has not appealed the decision with respect to taxes from mid-1952 through 1958, the district court was presented with the issue. We wish to explain why the government should be allowed to collect taxes for the two and one-half year interval but not for the subsequent period. The letter from Lucienne to the Department of State official in 1965, which appears in English translation in the record, states that after the Certificate of Loss of Nationality, "I have never considered myself to be a citizen of the United States." We think that in this case this letter can be construed as an acceptance and voluntary relinquishment of citizenship. We also find that in this particular case estoppel would have been proper against the United States. Although estoppel is rarely a proper defense against the government, there are instances where it would be unconscionable to allow the government to reverse an earlier position. *Schuster v. Commissioner of Internal Revenue*, 312 F.2d 311, 317 (9th Cir. 1962). This is one of those instances. Lucienne cannot be dunned for taxes to support the United States government during the years in which she was denied its protection. In *Peignand v. Immigration and Naturalization Service*, 440 F.2d 757 (1st Cir. 1971),

this court refused to decide whether estoppel could apply against the government. A decision on the question was unnecessary, since the petitioner had not been led to take a course of action he would not otherwise have taken. *Id.* at 761. Here, Lucienne severed her ties to this country at the direction of the State Department. The right hand will not be permitted to demand payment for something which the left hand has taken away. However, until her citizenship was snatched from her, Lucienne should have expected to honor her 1952 declaration that she was a taxpayer.

## PROPER PARTIES

██ Maria Benitez Rexach Viuda de Andreu complains that she should not have been a defendant as the Superior Court of Puerto Rico determined her not to be the executrix of Lucienne's estate. In the district court she failed to answer service of process and suffered a default judgment. In this court her failure to file a notice of appeal precludes any chance for relief.

The case is REVERSED and REMANDED for a proper determination of taxes for the period November 10, 1949 to May 20, 1952, in accordance with the parties' stipulation.