UNITED STATES, et al., Plaintiffs, Appellees,

v.

Carlos MARIN, Defendant, Appellant,

and

Caribbean Restaurants, Inc., Defendant, Appellee.

UNITED STATES of America, et al., Plaintiffs, Appellees,

v.

Carlos MARIN, Defendant, Appellee,

and

Caribbean Restaurants, Inc., Defendant, Appellant.

Nos. 80–1216, 80–1217.

United States Court of Appeals, First Circuit.

Argued Nov. 7, 1980.

Decided May 22, 1981.

Francisco Castro Amy, San Juan, P. R., for appellant Carlos Marin.

Nestor M. Mendez Gomez, with whom McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P. R., was on brief, for appellant Caribbean Restaurants, Inc.

John J. McCarthy, Attorney, Tax Division, Dept. of Justice, Washington, D. C., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, David E. Carmack, and Marc E. Albert, Attys., Tax Division, Department of Justice, Washington, D. C., were on brief, for appellees.

Before CAMPBELL and BOWNES, Circuit Judges, and HOFFMAN,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This is the latest in a series of cases arising from the United States' efforts to collect some $2,600,000 in taxes owed by the late Felix Benitez Rexach, a Puerto Rican engineer who earned large sums from construction projects in the Dominican Republic between 1944 and 1958. *See United States v. Lucienne D'Hotelle*, 558 F.2d 37 (1st Cir. 1977) and related cases cited therein at 38 n.1. The action from which these appeals are taken grew out of the government's attempt to reach Benitez's major remaining asset: The Normandie Hotel in San Juan.

To explain these proceedings, it is necessary to outline the history of a previous

* Of the Eastern District of Virginia, sitting by designation.

related action brought by the United States against Benitez on February 10, 1964 (*United States v. Benitez*, Civil Action No. 67–64, D.P.R.). At that time, Benitez was sole owner, as well as President and a director, of Escambron Development Company. Escambron, in turn, owned and operated the Normandie Hotel as its principal business. The other directors of Escambron were Modesto Bird, Sr., who also served as Treasurer, and Modesto Bird, Jr., who served as Secretary. In its suit, the United States sought to foreclose against Benitez's 100 percent stock interest in Escambron, and to have a receiver appointed who would liquidate Escambron to satisfy Benitez's tax liabilities. The government also sought to have assigned to it a debt of Escambron to Benitez in excess of $1 million.

On February 20, 1964, the parties to that suit, including Escambron and the two Birds, stipulated to the entry of an injunction *pendente lite* which prohibited them from "selling, assigning, pledging, encumbering, or otherwise disposing of any assets" of Escambron except "in exchange for fair and sufficient consideration in the regular course of business and provided that the consideration given in exchange for any assets is delivered in Puerto Rico to the Escambron Development Company at the time of any such transfer." This injunction continues in force to the present.[1] Felix Benitez Rexach died on November 2, 1975, while the government's suit against him was pending. On January 19, 1976, the court appointed Jorge Guillermety as receiver for the assets of Escambron,

for the purpose of conserving and managing said assets pending adjudication of the plaintiff's lien claims asserted in this action and for the purpose of selling said assets at the best possible price for the purpose of satisfying the liens of the United States as set forth in the judgment of this court entered on October 20, 1975 in the related Civil Action No. 531–64.[2]

On March 30, 1977, the government received a judgment in No. 67–64 against Benitez's estate for $2,622,127.13, plus interest, along with assignment to it of Escambron's debt to Benitez.

The events leading to the present action, No. 77–121, occurred between the time of Benitez's death and the conclusion of the government's suit against his estate (No. 67–64). At the time of Benitez's death, a portion of the ground floor of the Normandie Hotel was occupied by a franchise of McDonald's Restaurant. On January 2, 1976, Modesto Bird, Sr., purporting to act on behalf of Escambron,[3] signed a contract leasing to Carlos Marin the portion of the Hotel then occupied by McDonald's. The lease was for an initial term of three years with renewal at Marin's option for up to a total of 17 years. The district court found that Marin was fully aware of the ongoing litigation and pending receivership.[4] The court also found that the directors of Escambron never adopted a resolution authorizing execution of the lease.

Between February and May 1976, Marin sought to have the newly appointed receiv-

---

**1.** Shortly after bringing suit, the government filed a notice of *lis pendens* with the United States District Court and with the Registry of Property of Puerto Rico, indicating that the action might affect the property of Escambron. Six years later, on January 21, 1970, the Puerto Rico Registry rejected the notice on the ground that the suit did not affect the property of Escambron directly. The government denies having received notice of this action. The district court found that a check of the Registry's records of Escambron would have revealed the filing and later rejection of the notice.

**2.** Civil Action No. 531–64 was a suit by the government against Benitez in which Benitez was held liable for taxes owed by his wife. The government received judgment in that action

on October 20, 1975. *See United States v. Lucienne D'Hotelle*, 558 F.2d 37. After appellate review and later proceedings on remand, the government's judgment in that action was $732,933.07.

**3.** The district court found that no formal appointment of corporate officers had occurred since 1966, but that Benitez and the two Birds continued to serve in their respective roles as President, Treasurer, and Secretary until Benitez's death and that the other two continued in their roles thereafter.

**4.** The lease itself stated that "a receiver is consigned for the property."

er recognize the lease. Guillermety reported this development to attorneys for the government, informing them that the lease was for a total of three years.[5] The government made no objection to a three-year lease, and Guillermety informed Marin by a letter dated May 20, 1976, that Marin could take possession of the premises.

During this time, Marin was negotiating with Caribbean Restaurants, Inc., to sublease the property for use as a franchise of Burger King. The court found that Caribbean participated in these negotiations with full awareness of the litigation and of the receivership. Caribbean insisted that Marin's lease be registered as a public deed. The January 2 lease could not be registered because it was not notarized, because it was not authorized by the corporation, and because of its reference to a receivership. Marin and Modesto Bird, Sr., therefore executed a new lease on June 16, 1976, omitting the reference to a receiver. The new lease was notarized, and Modesto Bird, Jr., executed a "Certificate" stating that the corporation had authorized the registration of a deed.[6] The lease was registered, and Marin and Caribbean entered into a sublease, which was also registered, on September 20, 1976.

Sometime after May 20, 1976, Guillermety became aware that Marin's lease was for a total of not three, but 17 years. He brought this fact to the attention of government attorneys, who expressed their objections to Marin's attorney. Marin's attorney responded by reiterating that the lease was for three years, and assuring the government that the prospective sublessee was aware of its objections. On October 13, 1976, the receiver petitioned the district court for instructions regarding Marin's claims under the leases. The court declined to give instructions and advised Guillermety to act on advice of his attorney. In January 1977, the government and the receiver brought this suit seeking to void the leases and sublease.

The court found numerous defects in both leases and declared them void.[7] Finding that Marin had obtained no right to occupy the property and therefore had no interest to convey to Caribbean, the court held that Caribbean had occupied the property as a trespasser, and that the receiver was entitled to damages measured by the fair market value of Caribbean's occupancy. The court set this amount at the rent provided in the sublease between Marin and Caribbean,[8] holding the two defendants jointly liable and allowing them to offset the rent paid by Marin to the receiver and Marin's expenditures for cleaning the premises. Both Marin and Caribbean have appealed, each asserting numerous claims of error.

## I. Jurisdiction

■ Caribbean alone challenges the district court's jurisdiction. Caribbean claims

---

5. The court found that Guillermety's misconception on this point had two sources: first, a "blurred" copy of the lease provided to him, and second, a misrepresentation to this effect by Marin's attorney.

6. The Certificate read as follows:
   I, Modesto Bird Jr., of legal age, married, secretary of the Escambron Development Corporation and resident of San Juan, Puerto Rico, certify that on January 2, 1976, the Board of Directors of the Escambron Development Corporation unanimously approved the following Resolution:
   IT IS HEREBY RESOLVED that Mr. Modesto Bird, Sr. Treasurer of this corporation is authorized in representation of same to execute a deed in such terms and conditions that he believes convenient in order to raise into a public deed the lease agreement executed by this corporation and Mr. Carlos Marin on

January 2, 1976, covering a building next to the Hotel Normandie in San Juan, Puerto Rico and with an approximate area of three thousand square feet.
   And so that it is registered I swear and subscribe the present certification in San Juan, Puerto Rico on June 17, 1976.

7. The court below held two complete trials on this action. The first was held before Judge Torruella from March 7 to 24, 1979. On June 8, 1979, Judge Torruella ordered the case reassigned to another judge for further action. A second trial was held before Judge Grant from July 23 to August 13, 1979. Judge Grant entered judgment on February 21, 1980.

8. This amount was more than twice the rent provided in the lease between Marin and Bird.

that the district court erred in finding jurisdiction under various sections of the Judicial Code (28 U.S.C.) and the Internal Revenue Code (26 U.S.C.). However, the district court also explicitly found that the action "is ancillary to the parent case, Cause No. 67–64 in this court wherein the co-plaintiff, Jorge Guillermety, was appointed as Receiver." We agree with the district court that it had ancillary jurisdiction. Since this ancillary jurisdiction is sufficient, we need not reach Caribbean's arguments that there was no independent jurisdictional base. *Teherpnin v. Franz,* 485 F.2d 1251 (7th Cir. 1973), *cert. denied, sub nom. McGurren v. Ettelson,* 415 U.S. 918, 94 S.Ct. 1416, 39 L.Ed.2d 472 (1974).[9]

## II. *The Leases*

Marin and Caribbean both claim that at least one of the two leases was valid and binding on the receiver. Caribbean further claims that even if the leases between Marin and Bird were defective, its own rights under the sublease are protected by Article 34 of the Mortgage Law of Puerto Rico, 30 P.R. Laws Ann. § 59. We have reviewed the record in detail, and we find no error in the court's conclusions on each of these claims.[10]

The district court found the January 2 lease void on two independent grounds: first, Bird, as Treasurer of Escambron, lacked authority to contract for the corporation; and second, the directors of Escambron never adopted a resolution authorizing the lease. In addition, the court held that the lease violated the injunction *pendente lite,* and that even if the lease were valid, Marin's rights would be subordinate to those of the United States under the doctrine of *lis pendens.* We affirm the court's conclusion that the lease was never validly executed, and we therefore do not consider the effect of the injunction and the doctrine of *lis pendens.*

The by-laws of Escambron Development Company provide for contracts by the corporation as follows:

> The President ... shall ... sign and execute all contracts when authorized to do so by the Board of Directors.

> .     .     .     .     .

> No contract binding the Company to the payment of money or other obligation, except for the purchase of ordinary supplies, shall be made, except by like approval and authorization of the Board.

With respect to the role of Treasurer, the by-laws provide that he

> shall have the care and custody of the funds and securities of the Company in such bank or banks as the directors may elect. He shall countersign all certificates of stock signed by the President.

The district court understood these provisions to mean that only the President could contract for Escambron, and he only with

---

**9.** Among Caribbean's jurisdictional claims is the argument that the instant action was not adequately authorized by the Secretary of the Treasury and the Attorney General. The original letters from these officers combined with the continued active participation of employees of both these departments are sufficient authorization. *United States v. Morrison,* 531 F.2d 1089 (1st Cir. 1976); *United States v. Tillinghast,* 55 F.2d 279 (1st Cir. 1932). Caribbean's further argument that the judgments in No. 67–64 and No. 531–64 are "invalid, at least with respect to their effect on the Normandie Hotel, because they were entered into in absence of indispensable parties" is without merit. The prior actions concerned the tax liability of Benitez—Caribbean had nothing to do with such liability. The instant action gives Caribbean the appropriate opportunity to litigate its interest in the Normandie Hotel.

**10.** Both defendants begin by attacking the court's findings of fact, particularly its findings with respect to their knowledge of the ongoing litigation and with respect to the lack of corporate authorization for the leases. Citing *In re Las Colinas,* 426 F.2d 1005 (1st Cir. 1970), they urge us to apply a particularly high standard of review to the court's findings because the court adopted the plaintiffs' proposed findings of fact and conclusions of law almost verbatim. As stated in that case, the practice of adopting a party's proposed findings is not to be encouraged. It may cast some doubt on the independence of the court's thought process; we review findings of this sort with particular care. Nevertheless, the district court's findings must stand unless clearly erroneous. Fed.R.Civ.P. 52. We have examined the record thoroughly and do not find clear error.

authorization by the Board of Directors. We think this is the clear import of the by-laws.[11] Marin argues that the by-laws "do not prohibit the signing of contracts by an officer who is not the president." But Marin fails to cite any provision authorizing the Treasurer to contract for the corporation, nor does he cite any Puerto Rico case law holding that such authority is implied in by-laws such as these or in the inherent powers of a treasurer of a Puerto Rico corporation.

Marin also criticizes the court's factual determination that the directors of Escambron never adopted a resolution authorizing the lease. He concedes that no such resolution appears on the corporation's books, but cites his own testimony and that of another witness that they saw a resolution. The court discredited this testimony and credited that of both Birds that no resolution was ever adopted. Credibility judgments are for the trier of fact and are not to be disturbed on appeal unless they are unreasonable, which plainly this was not. Marin relies further on a certificate executed by Modesto Bird, Jr., on June 17, 1976, reciting that the corporation had, on January 2, authorized Modesto Bird, Sr., to execute a deed based on the January 2 lease "executed by the corporation." *See* note 6, *supra*. The district court discredited this certificate, stating that it did not believe the resolution quoted had ever existed.[12] We find ample support for this judgment both in the certificate itself and in the circumstances of its execution.

Marin contends that even if Bird lacked authority to act for the corporation, and even if the corporation did not ratify the lease, Bird had apparent authority on which Marin reasonably relied. The district court properly rejected this theory, noting that the lease itself acknowledged that a receiver was about to be appointed. Even if the corporate by-laws had not put Marin on notice of Bird's limited authority, actual knowledge that litigation was pending and that receivership had been determined to be necessary would surely cause a reasonable lessee to inquire further into the authority of one who purported to act for the corporation.

Since Bird lacked authority to contract for the corporation, and since the corporation never ratified his action, the January 2 lease was void. Appellants argue, however, that the lease was validated after the fact by the receiver's letter of May 20, 1976, in which he acquiesced in their occupancy; alternatively, they argue that both plaintiffs are estopped from challenging the lease since both led the defendants to rely on its validity. The court found various defects in this reasoning; most importantly, the court found that the receiver's letter was procured through fraudulent misrepresentations by Marin's attorney to the effect that 1) the lease was for a total of three years, and 2) the lease had been authorized by a corporate resolution. The court concluded that Marin was not entitled to benefit from these misrepresentations. The court's finding was not clearly erroneous, and its conclusion follows naturally from its finding; estoppel is an equitable doctrine which is not available for the benefit of one whose conduct has been inequitable.

---

**11.** Both appellants argue that these restrictions cannot be raised here because of 14 P.R. Laws Ann. § 1206, which provides:

Want of corporate power shall not be pleaded or asserted in any action or proceeding except (a) by the Commonwealth of Puerto Rico or an agency or instrumentality thereof . . . or (b) by a stockholder or stockholders of the corporation or its directors or officers or any of them in an action or proceeding between them or any of them arising out of the conduct of the business or affairs of the corporation, provided that the rights of third parties shall not be affected thereby.

This statute is similar to those in a number of states cutting off the corporation's defense of *ultra vires* in order to protect persons who contract with corporations. 1 Model Business Corporations Act Annotated § 6, at 201. The statute has no application here; the district court's holding is not that Escambron lacked power to enter into the lease, but that Bird lacked authority to act for Escambron, and that the corporation did not ratify his action by adopting a resolution authorizing the lease.

**12.** We note that this particular statement was not included in the government's proposed findings.

■ The June 16 lease and deed suffer from all the defects applicable to the January 2 lease. Registration does not cure these defects. 30 P.R. Laws Ann. § 58. These documents were therefore void and created no rights in Marin.[13]

■ Having no rights in the property, Marin could convey none to Caribbean, and the sublease between Marin and Caribbean was void as well. Caribbean argues, however, that its sublease cannot be invalidated because it is an "innocent third party" protected by Article 34 of the Mortgage Law of Puerto Rico, 30 P.R. Laws Ann. § 59. That statute provides as follows:

> Instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry.

The courts of Puerto Rico have applied this statute to protect only third parties who act without actual knowledge of any defect. *See Alvarez v. Aponte*, 83 P.R.R. 595 (1961); *People v. Riera*, 27 P.R.R. 1 (1919); *Amy v. Amy*, 15 P.R.R. 387 (1909). *But see Annoni v. Nadal's Heirs*, 135 F.2d 499 (1st Cir. 1943) (Puerto Rico court had suggested actual knowledge would not bar application of section 59 where defect did not appear in registry, but earlier Puerto Rico cases had held otherwise). Here, the district court found, on the basis of strong evidence, that Caribbean acted with full knowledge of the circumstances under which Marin obtained his lease, and that it actively participated in

an effort to conceal the defects from the registry in order to have the lease and sublease recorded. Under these circumstances, Article 34 provides no protection.[14] The district court correctly concluded that neither Marin nor Caribbean had any rightful interest in the Normandie Hotel, and that they therefore occupied the property as trespassers.

### III. *Damages*

Having found that Marin and Caribbean were joint trespassers in the Normandie Hotel, the district court awarded the receiver damages. The damages, for which Marin and Caribbean were held jointly liable, were set at the reasonable rental value of the premises, as measured by the rent in the sublease between Marin and Caribbean. This amount was offset by monies expended by Marin in cleaning the premises and the rent already paid to the receiver by Marin.

■ Both Marin and Caribbean argue that the district court erred in awarding damages because the government and the receiver had made no claim for damages. Marin and Caribbean contend they were prejudiced by not knowing that damages were claimed. Had they known, they say, they would have pressed certain counterclaims. We consider these contentions in turn.

■ First, it is true that the complaint did not contain an explicit prayer for damages. What was requested was a declaration that the leases were void or that the leasehold interests of Marin and Caribbean were subordinate to the interests of the United States. There was, however, a prayer for "such other and further relief as

---

13. The district court relied primarily on the receivership to find this lease void, holding that only the receiver could act for the corporation from the date of his appointment. Marin points out that Guillermety never voted the stock of the corporation so as to place control in his own hands, as the court's order authorized him to do. Marin argues that Escambron's management retains control of the corporation until the receiver acts to assume control. We need not address this argument. The June 16 lease was plainly void in any event for the same reasons as the January 2 lease.

14. The district court held Article 34 inapplicable on two additional grounds which we need not address: 1) that article 34 applies only where the third party's grantor had actual title subject to some hidden defect, not where, as here, the grantor had no interest in the property at all; 2) that the defect in Marin's lease appeared from the registry itself, since the notice of *lis pendens* was visible there, despite its rejection, and would have alerted Caribbean to the ongoing litigation in which an injunction had issued and a receiver had been appointed.

is equitable in the premises"; furthermore, Fed.R.Civ.P. 54(c) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Fed.R.Civ.P. 54(c). "This rule has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." *Robinson v. Lorillard Corp.*, 444 F.2d 791, 802–03 (4th Cir.), *cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971). *See Columbia Nastri & Carta Carbone v. Columbia Ribbon & Carbon Manufacturing Co.*, 367 F.2d 308, 312 (2d Cir. 1966).

The district court awarded damages for which Marin and Caribbean were jointly liable because the evidence presented at trial proved not only that the leases were void but that Marin dealt with the receiver in bad faith, and that Caribbean knew that there were irregularities in Marin's January lease with the corporation. We think the district court properly determined that damages were an appropriate element of relief in this case.

To be sure, there may be cases where the failure to ask for particular relief so prejudiced the opposing party that it would be unjust to grant such relief. *See Rental Development Corporation of America v. Lavery*, 304 F.2d 839, 842 (9th Cir. 1962). This is not such a case. The damages award stemmed directly from the facts proved at trial concerning the validity of the leases. *See Robinson v. Lorillard*, 444 F.2d 791. Questions of defendants' good faith and credibility were inherent in the issues presented to the court. Moreover, Marin and Caribbean had ample notice in the course of the proceedings that the receiver claimed a right to recover the differential in the lease between them, and had an opportunity to contest that claim.[15]

■ We turn next to the computation of damages. The damages award, for which Marin and Caribbean were held jointly liable, the rental value of the lease between Marin and Caribbean minus Marin's expenses for cleaning the premises and any monies Marin had already paid to the receiver on its lease with the corporation, is consistent with Puerto Rico law.

> A possessor in bad faith shall pay for the fruits collected and for those which the lawful possessor might have collected, and shall only have the right to be reimbursed for the necessary expenses incurred in the preservation of the thing. Expenses incurred in improvements for luxury and pleasure shall not be refunded to the possessor in bad faith, but he may remove the objects for which such expenses have been incurred, provided the thing suffers no injury thereby, and the lawful possessor does not prefer to retain them and pay the value they may have at the time he enters into possession.

31 P.R. Laws Ann. § 1470. We find no error in the district court's conclusion that both Marin and Caribbean were possessors in bad faith, the court having found that each was aware of the defects in the January lease. *See* 31 P.R. Laws Ann. § 1424.

There is no merit in Marin's objection that it would have "counter-claimed and brought evidence to establish expenses in-

---

**15.** At the close of the first trial (*see* note 7, *supra*), the government's proposed findings of fact and conclusions of law provided that the receiver was entitled to claim the fruits and benefits of Marin's possession, defined as the rent differential. At this point, the government, viewing Caribbean as merely negligent, sought to collect from Marin. Shortly thereafter, the government advised counsel for Caribbean by letter, a copy of which went to counsel for Marin, that it claimed the rent payments from Caribbean to Marin. In November 1979, after the close of the second trial at which the evidence showed that Caribbean knowingly participated in registering an invalid lease, the government submitted proposed findings of fact and conclusions of law which included joint liability for damages. The district court's order, memorandum, and findings were not filed until February 1980. Both Marin and Caribbean therefore had opportunity to contest the request for damages. Indeed, Caribbean filed a supplement to its trial memorandum in December 1979. Both parties also filed post-judgment motions under Rules 52 and 59 of Fed.R.Civ.P. After hearing argument from counsel on all of these motions, the district court denied the motions. Neither appellant appeals these rulings.

**32**

curred, loans to the lessor, and indemnity for new obligations, etc." had it known about the damages claim. Prior to the second trial and after receipt of letters from the government claiming the right to the lease differential, *see* note 15, *supra*, Marin did in fact file a counterclaim for expenses incurred in protecting the Hotel Normandie against vandalism and robbery. However, Marin abandoned this claim and presented no evidence in support thereof. Marin's failure to press its own counterclaim can hardly be laid at the doorstep of the government.

Caribbean objects to the damages award on the ground that it has already paid to Marin the amount required by the judgment. The evidence at the second trial warranted a finding of liability in favor of the government against Caribbean, and the amount awarded was well within the boundaries of that authorized by section 1470, *supra*. Caribbean's recourse, if any, would be for contribution from Marin. *Garcia v. Government of the Capitol*, 72 P.R.R. 133, 140–41 (1951); 31 P.R. Laws Ann. § 3109.

*Affirmed.*